Mr. Justice Smith
delivered the opinion of the court.
This is a motion to strike from the roll of attorneys and coun-sellors of this court the name of Charles K. Brown.
The alleged acts of unprofessional conduct and malpractice upon which this motion is based are:
1. That the said Charles If. Brown did, in a case pending in the circuit court of Rankin county, wherein he was a defendant, and H. G. Runnels, Governor of the state of Mississippi, plaintiff, mutilate the declaration filed in said cause, with the intention of 'making it defective and liable to a special demurrer; and having thus produced a defect in the declaration, that he filed a demurrer thereto; and
2. That the said defendant, in the case of Barlow v. Myrick, did antedate the issuance of the original writ, with intent to avoid the effect of the statute of limitations.
Proofs were adduced in support of each of those charges; and the defendant declining to offer any rebutting testimony, it becomes in the first place the duty of this court to inquire into the sufficiency of those proofs to maintain the charges.
The evidence offered in support of. the first allegation, conclu *304 sively to my mind, establishes the fact, that the erasure of the declaration above referred to, was made after it was filed in the office of the clerk of the circuit court of Rankin county. This fact Is proved by the testimony of Hugh L. French, who was then deputy clerk of the said court, and the admissions of the defendant himself. Mr. French states that if he is not mistaken, the word Rankin “ was inserted above the word Hinds” in the declaration when it was filed, and that of this fact he is ascertain as he is of any thing which he thought he had before seen. There is little probability that he could have been mistaken, as "the circumstances accompanying the reception by him of the declaration were well calculated to impress upon his memory the fact about which he deposed; but the truth of this statement is placed beyond question by the admission of the defendant himself. Mr. C. W. Webber, who was present at the meeting of the members of the bar, referred to by several of the witnesses who were sworn, states expressly, that Mr. Brown said “that he (Brown) had examined the declaration at the previous March term of the Rankin court, when it then contained in its caption the word “ Rankin” county.
But as to the person by whom the declaration was torn and mutilated, the evidence is of a much less direct and positive character. The act charged to have been done, is one which would have subjected the party to a criminal prosecution, and is of a character which would never by an individual of sound mind be committed in the presence of witnesses. A charge, then, of this kind is of difficult proof and could rarely, if ever, be established .by direct and positive testimony; but the difficulty of conviction furnishes no very strong ground for the relaxation of the rules of evidence. But the circumstances established by the testimony in this case strongly point to the individual charged as the guilty person. Let us examine them. It was admitted by the defendant in open court, that the other joint defendant, (Mr. Coffee,)- in the case referred to, did not tear off the caption of the declaration. Setting aside Mr. Coffee, then, there is no other individual, except Mr. Brown, who could have the slightest interest in producing the defect in the declaration. It is true that the evidence tended *305 to prove that no very friendly feelings existed between Dowe, the clerk of Rankin circuit court, and French, who was then his deputy, and the defendant; but the supposition is so very improbable that either of those individuals perpetrated the deed with the intention of trapping Brown in this way, that it is not to be entertained. Brown knew that the erasure had been made after the papers were filed with the clerk, and whether he believed it to have resulted from design or accident, it was highly culpable in him to take advantage of it. But that Brown knew or believed that neither French nor Dowe had been guilty of mutilating the declaration will scarcely admit of doubt. Brown had there intended to have Dowe displaced, and, as we have seen, no gentle or confiding feeling -subsisted on his part for French. If he had found the declaration mutilated in the manner proved, the natural effect which this discovery would have produced, if he believed it to have been done by one of them, would have been, unquestionably, a desire to have them exposed and prosecuted for the crime. But that he neither knew nor believed the act had been perpetrated by either of them, or by any other individual, with design to “trap him,” is most clearly inferrable from his own statement. It is in proof by the testimony of Mr. Webber, that Brown said he had procured the declaration from the clerk a short time before the September term of the Rankin circuit court, for the purpose of pleading to it, when he was surprised to find the words “ Rankin county” torn off, and that he hesitated what he should do, knowing- that Mr. Dowe was hostile to him; he feared he might have done it to “trap him.” Now if Brown believed that this was a snare set for him, with a hope that he might run into it, is not the supposition repugnant to the most ordinary sagacity, that he would voluntarily entangle himself in its meshes, and thus consummate the plan laid by his enemy? We are therefore impelled to the conclusion, that all those facts combined, created a violent presumption that the defendant Brown not only took advantage of the defect in the declaration, but that he produced it by tearing off the words “Rankin county.”
The evidence adduced in support of the second charge is clear, direct, and undisputed. Mr. Webber stated, that Brown admitted *306 that he had antedated the writ in the case of Barlow v. Myrick, and that he had been induced to do so from a wish to avoid squabbling about the statute of limitations. This evidence is conclusive; but if it,were necessary to give to it strength, powerful corroborative circumstances are found in the facts detailed by Mr. Coffee.
The excuse offered in avoidance of this charge, by the counsel on the part of the defence, who commented upon the testimony with great ability, that Brown may not have been induced to commit the act from a sinister motive, but from ignorance of the moral character of the act and of the effect which it was calculated to have upon the right of the opposite party, cannot be assented to as sound, or warranted by the circumstances of the transaction. Mr. Brown cannot hope to enjoy an immunity denied to the most ignorant member of the community; that is, a right to excuse the violation of a solemn duty by an ignorance of the law. Mr. Brown was deemed worthy at the time of his admission to the bar, to have his name enrolled upon the list of a profession distinguished for its moral and intellectual elevation, as well for his legal acquirements as the supposed purity of his morals. The supposition, then, that he could have acted from sheer ignorance in this matter is to pay his honesty a compliment which his intelligence must reject.
There remains then but this further question to solve; it is this; has this court the power to strike from the roll of attorneys and counsellors, the name of an individual proved to have been guilty of unprofessional or criminal conduct; and is this a proper occasion for the exercise of that power?
As to the latter branch of this proposition we entertain no doubt. The acts charged, and which we believe fully proved, are morally wrong, and have been denounced by the criminal laws of the land, in terms of severe reprehension; as to the former, we have no question. It is conferred by the statute law of the state, and the doctrine is well settled, that without statutory provisions, the right to control its officers, and to determine who should appear-before it in the capacity of attorneys, is incidental to all courts, and is necessary to the preservation of decorum, and *307 the respectability of the profession. It is a power which ought to be exercised with great caution; although it is never used' for the purpose of punishment, yet the decision of a com’t disbarring one of its attorneys, may have the most blighting effects upon the future destinies of the unfortunate individual.
Deeply impressed with this conviction, and of the- delicate responsibility which rests upon us, it is with the utmost regret that we feel bound to sustain the motion.
The judgment of the court, therefore, is, that the name of Charles K. Brown be stricken from the roll of attorneys and counsellors of this court, and that said Charles K. Brown, hereafter, shall never be permitted to practise as an attorney and coun-sellor at law in any of the courts of this state.