# THE PEOPLE *ex rel.* Adolph Moses *et al.*

## *v.*

## ALPHONSO GOODRICH.

1. ATTORNEY AT LAW—*power of Supreme Court over license.* The Supreme Court, having power, by express statute, to grant a license to practice law, has an inherent right to see that the license is not abused or perverted to a use not contemplated in the grant.

2. In granting a license to practice law, it is on the implied understanding the party receiving it shall, in all things, demean himself in a proper manner, and abstain from such practices as can not fail to bring discredit upon himself and the courts.

3. SAME—*not entitled to a trial by jury, on a proceeding to strike name from the roll.* The Supreme Court has power to strike the name of an attorney from the roll for sufficient cause shown, upon information, and the defendant has no right to have such case tried by a jury.

4. SAME—*cause for striking from roll.* When an attorney publishes advertisements without any signature, representing that he can procure divorces for causes not known to the law, and without any publicity, and without reference to the residence of the parties, and, by such advertisements, solicits business of that character by communication through a particular postoffice box, by its number, such conduct is a libel on the courts and a disgrace to the attorney, and is calculated to bring reproach upon the profession, and the name of the offending party should be stricken from the roll.

This was an information, filed in this court by Adolph Moses and others against Alphonso Goodrich, for a rule to show cause why his name should not be stricken from the roll of attorneys.

Mr. ADOLPH MOSES, Mr. ABRAM PENCE, and Mr. WILLIAM H. KING, the relators, *pro sese.*

Messrs. RICHMOND & CONDEE, and Messrs. O'BRIEN, BARGE & DIXON, for the respondent.

Mr. JUSTICE BREESE delivered the opinion of the Court:

On the eighth day of October, of this present term, an information, duly subscribed and sworn to, was filed in this

court, and a rule thereupon prayed, against Alphonso Goodrich, requiring him to show cause, by the twentieth day of that month, why his name should not be stricken from the roll of attorneys of this court.

The information was filed by three members of the bar, practicing their profession in the city of Chicago, interested, as they allege, in upholding the integrity of the courts and of the profession of the law, and in the proper administration of the law.

The defendant is alleged to be a licensed attorney and counselor at law in the same city, practicing his profession in the courts thereof.

The information charges that defendant has been guilty of improper conduct in causing false and fraudulent advertisements to be inserted in divers newspapers published in the United States, inviting "so called" divorce business, and that he has, for years past, caused to be inserted in the daily newspapers in Chicago, anonymous advertisements, specimens of which are incorporated in the information, one of which, of August 9, 1870, is of the purport following:

"Divorces legally obtained, without publicity, and at small expense. Address, P. O. box 1037. This is the P. O. box advertised for the past seven years, and the owner has obtained five hundred and seventy-seven divorces during that time."

Another advertisement in a daily paper of October 21, 1871, of the purport following:

"Divorces legally obtained for desertion, cruelty, etc.; fee after decree. Eight years' experience. Address, P. O. box 1037," varied in the daily paper of the 28th, by adding, "Scandal avoided."

It is further charged that the newspaper press of Chicago, having exposed the system of anonymous divorce advertisements, and fraudulent divorces, mentioned the name of Goodrich, as connected therewith, as "A. Goodrich, of Postoffice

box 1037 notoriety," after which, the divorce advertisements of defendant, as published in a Chicago daily paper of September 30, 1875, read in this way:

"Divorces legally obtained—not fraudulently. Fee after decree. Ten years' practice in the courts of Chicago. Address, P. O. box 1037."

It is further charged that defendant, in the month of August, 1875, caused to be inserted in the "Daily Herald" of that date, a newspaper of large circulation, published in the city of New York, this advertisement:

"Divorces legally obtained for incompatibility, etc. Residence unnecessary. Fee after decree. Address, P. O. box 1037, Chicago, Ill." And that defendant caused the same to be published in the New York "Daily Sun" of September 14, 1875, and in newspapers in various other States of this Union.

It is further charged, that defendant well knew the fact that no divorces could be obtained in any of the courts of this State without publicity, and that he used the phrases, "without publicity," and "scandal avoided," in his advertisements, to impress the public mind that he could procure divorces in the courts of Chicago without the proceedings being made public; averring that the several newspapers published in that city did then publish, and have always published, the proceedings of the courts, and that, for some time past, the practice of referring divorce causes to masters in chancery had been abolished. And it is further charged, that defendant well knew the fact that "incompatibility" was not one of the lawful causes for divorce in this State, and that one year's residence in this State was required prior to filing a bill of complaint for divorce, unless the offense complained of was committed in this State, whilst one or both parties resided therein, and could only be had in the county where complainant resided.

It is then charged that these advertisements are false and

scandalous, calculated to bring the courts of justice into disrepute and contempt, and were published by the defendant with the intention of deception and fraud.

The advertisements were admitted, in defendant's answer, to be his act, and a printed letter, purporting to have been issued from his office, 124 Dearborn street, Chicago, bearing his printed signature, and dated August 21, 1875, ostensibly in reply to a previous letter from some unknown person, but really intended as "a circular," was also his act. In this circular, after enumerating the several causes for divorce, as specified in the statute of this State, he states, also, on his professional reputation, "incompatibility" as a cause. The "circular" also informs the party of the total amount of charges, one hundred and twenty-five dollars, twenty-five dollars of which was required in hand, and the balance when the decree, under the seal of the court, was placed in the hands of the applicant. If, however, the party preferred, no present payment was required, but a deposit in bank, or with an express agent at the residence of the party, with the understanding it was to be paid to the attorney when he sent the decree. The "circular" contains this further direction: "If the above is satisfactory, and you wish me to proceed, please deposit the money in bank or with express agent, and have them sign the enclosed receipt and return to me."

To indicate further the nature of defendant's special avocation, we give a copy of the required receipt:

"$125.                                                     *August* 21, 1875.

Received of ——————, $125, in *escrow*, to be paid to A. Goodrich upon his presenting to me a certified copy of a decree of divorce, under the seal of a court of record, in the case of —————— *versus* ——————. In case decree of divorce is not obtained within three months from this date, said sum of money to be refunded to ——————."

And this bears, as its emblem, the figure of Justice, with one hand resting upon a sword, and with the other bearing aloft the scales!

The wiles and arts and contrivances to which defendant has resorted in his most disgusting course, are not only not denied, but justified, and, in explanation of his claim to be able to procure a divorce on the ground of incompatibility, he alleges, by the laws of Utah Territory, that is a ground of divorce. This we regard as the merest subterfuge, for his advertisements are those of a lawyer residing and practicing in this State, and the scope of the advertisements is, to advise distant parties of the requirements of the laws of this State. Besides, the defendant exhibited no authority to practice law in Utah, or in any other State than this. It was a false and fraudulent statement, and known to be so when made.

Again, these advertisements, some one or all, convey the idea that, by some unexplained means, defendant has such control over the courts of justice in the city of Chicago, as to induce its ministers to conceal from public view and public scrutiny their proceedings in divorce cases, and no matter what the claim of the applicant may be, whether true or false, whether statutory or not, he, by long practice of his arts, can accomplish all that is desired, neither the courts nor the public being the wiser on account thereof. Such shameless effrontery has never before, to our knowledge, been manifested by any member of this or any other bar, and it should stigmatize their author with enduring shame and contumely.

These advertisements are not only a libel upon the courts of justice of this State, but are false in themselves, and put forth to the public by one who would not place his name to them. No high-minded, honorable member of our noble profession, in this or in any other State, so demeans himself, nor does any member of it, jealous of his own honor, and duly appreciating his relations to the profession and to the courts, so conduct. Look to the distinguished men who have adorned the bar, who have shed lustre upon the profession — the Websters, Wirts, Pinckneys, Emmets, and, in our own State, the Karnes, Cobbs, Blackwells, Lockwoods, Walkers, and

others without number, who have passed away, who had their own honors and the honor of their profession in view, with ambition stimulating them to win such trophies as are gladly awarded to well earned merit. Were they ever concerned in such low, degrading efforts? Never. It is not denied, an attorney may make any one of the branches of the law a specialty, but he must not, in so doing and acting, use undignified means, or low, disgusting artifices, and, least of all, should not withhold his name to his advertisements, nor should they be false, or contain libels on the courts. No honorable, high-minded lawyer, alive to the dignity of his profession, and emulous of its honors, could stoop so low as this defendant has. That he should embellish his papers, contrived in a spirit of barratry, with the emblem of Justice, is singularly inappropriate. We have no patience with one who, having our license to practice law in our courts, has so shocked all sense of propriety, of professional decorum, and of respect to the courts in which he practices. He is an unworthy member, and must be disbarred.

The objections made by the defendant, of want of jurisdiction in this court to entertain the case, the unconstitutionality of the law giving the jurisdiction, the right of a trial by jury on the information, are entitled to no weight.

This court, having power, by express law, to grant a license to practice law, has an inherent right to see that the license is not abused, or perverted to a use not contemplated in the grant. In granting the license, it was on the implied understanding the party receiving it should, at all times, demean himself in a proper manner, and if not reflecting honor upon the court appointing him, by his professional conduct, he would at least abstain from such practices as could not fail to bring discredit upon himself and the courts; and above all, that he should not publish false and fraudulent advertisements of his capabilities, from the long experience of years, to keep secret judicial proceedings, thereby implying a judicial control, which, of itself, is a libel upon those courts.

154          The People *ex rel. v.* Goodrich.          [Sept. T.

Opinion of the Court.

The *morale* of defendant's professional conduct deserves special notice. He makes divorce cases a specialty. How many persons in our broad land weary of the chain that binds them? And how many are eager to seize upon the slightest twig that may appear, to aid them in escaping from a supposed sea of troubles, in which wedded life has immersed them? How many are fretting under imaginary ills, and what better devices than those practiced by this defendant, could be contrived to increase these disquietudes. and stimulate to effort, by perjury, if need be, to free themselves from their supposed unhappy condition? Is it desirable divorce cases should accumulate in our courts? If so, the defendant is justified in the means he has used, and is using to that end. An honorable. high-toned lawyer will always aid a deserving party seeking a divorce, as coming strictly within his professional duties. He will render the aid—not solicit the case; and he will, in all things regarding it, act the man, and respect, not only his own professional reputation, but the character of the courts, and discharge the unpleasant duty in all respects as an honorable attorney and counselor should do. Such a lawyer will never be found stirring up or soliciting such cases, nor disgrace the profession by the dissemination of such "a circular" and "receipt in *escrow*" as this defendant manufactures and uses.

In view of our duty, as imposed by the statute, and of the defendant's rights as guaranteed him by the constitution and the laws, we are unable to see why this court has not, and should not have, the power to purge itself of all uncleanness which may be found in its cloisters, and ridding itself of any nuisance which may desecrate them.

We are satisfied the defendant has disgraced the profession of the law, and his position as one of its ministers, and that he ought to be, and he is from this time forth, disbarred. His name will be stricken from the roll of attorneys of this court.