## IN THE MATTER OF I. N. EBBS.

(Filed 22 December, 1908.)

1. **Attorneys—Proceedings to Disbar.**

   Proceedings to disbar an attorney, brought under the provisions of Public Laws 1907, ch. 941, are of a civil nature.

2. **Same "Convicted"—Other Jurisdiction—Power of Courts.**

   Chapter 941, Laws 1907, does not confer upon the court the power to disbar an attorney because he has been "convicted" in the courts of another State or of the United States.

3. **Same.**

   Revisal, sec. 211, is a disabling statute, and withdraws from the court the power to disbar attorneys convicted of crimes in another jurisdiction.

   BROWN, J., and CLARK, C. J., dissenting.

ACTION tried before *Peebles, J.,* upon demurrer, heard at May Term, 1908, of BUNCOMBE.

Pursuant to the provisions of chapter 941, Public Laws 1907, the Committee on Grievances of the North Carolina Bar Association filed with the Solicitor of the Fifteenth Judicial District an accusation stating that, upon investigation of certain charges preferred before them against I. N. Ebbs, a licensed attorney and member of the Bar of the State, residing in said district, the said committee were of the opinion that said charges should be further investigated by the court, as provided by the statute. A copy of the charges and the records upon which they were founded accompanied the report. The solicitor thereupon caused

the report and the records, together with an accusation preferred by himself embodied in the report, to be served on said attorney. *Hon. R. B. Peebles, Judge presiding,* thereupon made an order reciting the proceedings had before the committee, directing the said I. N. Ebbs to appear before him, at Asheville, N. C., on a day named, and answer said charges. On the return day the said I. N. Ebbs duly appeared, being represented by counsel. The committee was represented by the solicitor of the district and other counsel. The accusation was founded upon certified records from the Circuit Court of the United States, Eastern District of Louisiana, showing a bill of indictment returned by the grand jury, charging respondent with forgery in six counts. The specific acts charged consisted in unlawfully, falsely and feloniously forging and altering certain receipts, accounts, etc., with intent to defraud the United States. Upon a trial before said court, respondent was convicted upon all of the counts except the first, and sentenced to imprisonment in the Parish Prison of the Parish of New Orleans for the term of ninety days and to pay a fine of $1,000.

. Respondent demurred to the evidence, as follows:

"The respondent, I. N. Ebbs, with leave of court, objects to the sufficiency of the accusation preferred by the solicitor for the State, as amended, in the above-entitled proceeding, and says:

"1. The said accusation contained no cause for the disbarment of respondent, except on allegation of a conviction of the defendant of a crime alleged to be punishable in the penitentiary, before and by the United States District Court, for the Eastern District of Louisiana.

"2. That said accusation does not charge this respondent with having been convicted of any crime since the passage of chapter 941 of the Laws of North Carolina passed in the year 1907.

"3. That the only conviction alleged in said accusation is a conviction for an offense not punishable in the penitentiary by the laws of North Carolina, even if the offense had been committed within the State of North Carolina."

His Honor overruled the demurrer and rendered the following judgment:

"It is ordered, adjudged and decreed that the said I. N. Ebbs be and he is hereby disbarred as an attorney at law from the practice as an attorney and counselor in the courts of this State, and that the name of the said I. N. Ebbs be stricken from the roll of the practicing attorneys of the courts of this State, and that he henceforth be denied any and all the rights or privileges of an attorney and counselor in the courts of the State of North Carolina.

"The clerk of this court is hereby ordered to send a certified copy of this judgment to the Clerk of the Superior Court of Madison County, North Carolina, and the clerk of Madison County will enter the same in the judgment docket of his court."

Respondent excepted and appealed.

*Assistant Attorney-General Hayden Clement* for the State.
*Adams & Adams* and *J. M. Gudger, Sr.,* for defendant.

CONNOR, J. Because of the novelty of the question raised by the demurrer of the respondent, and the importance to the public welfare of the correct interpretation of the statute under which this proceeding was instituted, we have given the record a careful and anxious consideration. The statute of 1907 (chapter 941) was enacted at the instance of the State Bar Association for the purpose of enabling it to more effectually discharge its duty to the people of the State, the courts and the bar by excluding from the profession unworthy members. This is the first instance in which the courts have been called upon to interpret and enforce its provisions.

Section 1 provides: "That an attorney at law must be disbarred and removed for the following causes: *(a)* Upon his being convicted of a crime punishable by imprisonment in the penitentiary. *(b)* When any judgment is rendered against him for money collected by him as an attorney and retained by him without any *bona fide* claim thereto or any part thereof.

"Sec. 2. That an attorney at law may be disbarred," etc., naming two causes.

The motion to disbar the respondent is based upon the first section. It will be observed that, among the several causes for which an attorney must or may be disbarred, this is the only

one in which the court is required to act upon a record, and the respondent is not permitted to offer anything by way of defense or exculpation. The court cannot inquire into his guilt. The production of the record, showing a conviction, makes it the imperative duty of the court to disbar him. Without expressing any opinion as to the wisdom of so drastic a statute, we are not permitted to enlarge its terms by construction. The respondent says that by a recognized canon of construction the penalty must be confined to a conviction had in a court of this State. The case was thoroughly argued before us, and the industry of counsel has afforded us much aid. Counsel for respondent rely upon the rule laid down by *Mr. Justice Gray* in *Logan v. United States,* 144 U. S., 263 (p. 303). In that case the plaintiffs in error were indicted in the Circuit Court of the United States for murder and conspiracy, under the provisions of an act of Congress. The indictment was found and the case tried in the State of Texas. The Government introduced one Martin as a, witness. It appeared that he had been convicted in the courts of North Carolina of a felony and sentenced to imprisonment in the county jail. The Texas statute rendered a person convicted of a felony incompetent to testify in the courts of that State. In discussing the exception to the ruling of the court admitting the witness, it was said: "At common law and on general principles of jurisprudence, when not controlled by express statute giving effect within the State which enacts it to a conviction and sentence in another State, such conviction and sentence can have no effect by way of penalty or of personal disability or disqualification beyond the limits of the State in which the judgment is rendered." The question, as applied to the disability of a person offered as a witness to testify, arose in this State, in *State v. Candler,* 10 N. C., 393, when it was held by a divided court that a witness convicted of an infamous crime in Tennessee was incompetent to testify in this State. The Chief Justice concedes that such was not the law in England, but was of the opinion that by virtue of the "full faith and credit" clause of the Federal Constitution the law in this country was otherwise. The Court was not construing a statute in that case, but discussing a general principle of law. The question has been decided other-

wise in many other States, and the decided weight of authority is against the decision in *Candler's case*. *Parker, C. J.*, in *Com. v. Green*, 17 Mass., 515, writes a very able opinion, holding that "The conviction of an infamous crime in a foreign country or in any other of the United States does not render the subject of such conviction an incompetent witness in the courts of Massachusetts." He says: "To hold a person incompetent on account of such conviction is to give effect to the conviction and to enforce the punishment; and thus the penal laws of our State would reach into others," violating well-settled principles. In *Simms v. Simms*, 75 N. Y., 466, it appears that by a statute of that State it is provided that "No person sentenced upon a conviction for felony shall be competent to testify, unless pardoned," etc. *Rapallo, J.*, said: "I think it quite clear that the disqualification created by this statute is consequent only upon a conviction in this State." The conviction relied upon to exclude the witness was had in Ohio. Quoting Greenleaf on Evidence, who says that the weight of modern opinion seems to be that personal disqualification arising not from the laws of nature but from positive law, especially such as are of a penal nature, are strictly territorial and cannot be enforced in any country other than that in which they originated, he says: "I think this doctrine applicable to the question now in hand, and that there is nothing in the Constitution of the United States which prevents such application or requires that the personal disabilities, such as incompetency to testify or to vote, which may be imposed upon a person convicted of crime in one State, should follow him and be enforced in all the others. If such were the operation of the constitutional provision, the qualifications of witnesses called in our courts and of voters at our elections might be made to depend upon the laws of other States instead of our own." The learned Justice notices the decision in *Candler's case* and meets the argument upon which it is founded. It is insisted by the Attorney-General, and, we think, correctly, that this is not a criminal action. It is rather in the nature of a civil proceeding, and probably should be prosecuted in the name of the Bar Association. This, we notice, is done in several of the States—as in Maine—*Penobscot Bar v. Kimball*, 64 Me., 140. Treating it as a civil proceeding,

it is clear that the record of a conviction in a criminal action in another jurisdiction would not be conclusive of guilt. *Judge Rapallo* says: "A record of conviction for a crime is not conclusive evidence, in a civil action, of the facts upon which it was based. There is a great weight of authority against its being admissible at all, except as evidence of the fact of conviction, when that fact is material." Greenleaf Ev., sec. 537; Wharton Conflict Laws, sec. 108; *Ganitee v. Bond*, 102 Md., 379; 5 Am. and Eng. Anno. Cases, 915. The point was presented and decided in an interesting case in 2 West Va., 569—*Ex parte Quarrier.* The applicant for admission to the bar was duly licensed as an attorney in another State, and, complying with the statute in the newly made State of West Virginia, he was met with the objection that he was guilty of treason, having in his native State voted for the ordinance of secession and voluntarily entering the army of the Confederate States. He had received a pardon from the President. The Court held that he was entitled to be admitted, saying: "Indeed, it must not be forgotten that in this case no treason against the State of West Virginia, whose courts are invoked to consider the subject, has been either proved or confessed, and the only acts stated that could amount to the crime of treason were perpetrated against the United States, and for which the party has been pardoned by that Government. Now it would be straining the point too far to hold, as contended for, that the war being waged against the United States, of which the State of West Virginia was one, was therefore waged against her in the sense contemplated by the statute against treason, and that therefore the acts in question were treason against the State and felony within the statue. For, while it is not intended to deny that the same act might constitute treason against the United States and also against the State, it is not enough to wage war against the United States generally or collectively or as component parts of the national Union, but it must be done directly against the State in particular. * * * An appeal has been made to the court to exclude attorneys, circumstanced as the applicant is, upon the ground of public policy and the danger of baleful influence in a political light. But

150—4

these are considerations better addressed to the Legislature than the courts. Whatever may be the true policy of the lawmaking power to pursue is a question for that power to determine. The duty and true policy of the courts to pursue is to expound the law as it is, and, if it is not what it ought to be, to leave it to the Legislature to change it."

In *Wisconsin v. Insurance Co.*, 127 U. S., 265, it is said (p. 291) : "The proper place for punishment is where the crime was committed, and no society takes concern in any crime but what is hurtful to itself." Kames Eq. (3 Ed.), 326. When we consider the question upon the "reason of the thing" and sound State policy, the wisdom of the law, as we find it laid down with practical uniformity, is manifest. It is the natural interpretation of all statutes creating offenses and defining conduct, the doing of which is made indictable or subject to penalties, to refer them solely to the commission of such acts within this State. In respect to punishment of crimes and imposition of penalties, the States act within their own territorial limits and the Federal Government within its own sphere. No State can administer the Federal statutes, maintain prosecutions for their violations or impose punishments or penalties. *Parker, C. J.*, in *Green's case, supra*, wisely says: "Whether the facts which would be here deemed an infamous crime are the same which constitute the like offense in the country from which the record comes, the court will have no means of knowing with certainty. The crime of treason is known to be different in different countries. What is felony also in our country may not be felony in another, and it is competent for the Legislature of every nation to attach disabilities to the commission of offenses which by the laws of other nations may be wholly without such consequences." We know that the Federal Government punishes practically all offenses with imprisonment in the penitentiary. Violations of the revenue laws, often technical and involving no moral turpitude whatever, may be so punished. Again, acts which in our State are deemed misdemeanors, punishable by fine or a short term in the county jail or house of correction, are deemed of grave character and punished by imprisonment in the State's Prison in other States. Each State makes its penal codes, and

the Federal Government does the same. If any other interpretation were put upon our statute it would logically follow that for violation of the Federal statutes or statutes of other States citizens of this State would forfeit their right to vote under our Constitution. Certainly the people of North Carolina never contemplated that any such construction would be put upon their laws. Care must be had to keep clearly in mind the fact that the court, in enforcing the statute, does not and cannot inquire whether in truth the respondent has committed the crime charged. It is restricted to the inquiry whether he has been "convicted," and for this purpose the record of conviction by a court having jurisdiction to hear and determine the charge is conclusive, and the Court *must disbar* him. No provision is made for pardon or for repentance, followed by a life of probity. We are of the opinion that upon well-settled principles and sound reason the statute is confined to a conviction in this State.

It is insisted that, however this may be in regard to the act of 1907, the respondent may be disbarred by the court under the power conferred in section 211, Revisal. It is suggested that this statute is by implication repealed by the act of 1907. We incline to the opinion that the last statute is not in conflict with sections 211 and 212 of the Revisal. It is not necessary that we should decide the question, because, while the language clearly restricts the power of the courts to disbar an attorney, the exceptive language, "unless he shall have been convicted in open court or confessed himself guilty of some criminal offense, showing himself unfit to be trusted," etc., are to be interpreted in the same way as the word "convicted," in the act of 1907; hence the same obstruction is met in enforcing section 211 against the respondent. The history of this legislation may be learned and the purpose of the Legislature understood by reference to *Moore, ex parte,* 63 N. C., 397; *Biggs, ex parte,* 64 N. C., 202, and *Schenck, ex parte,* 65 N. C., 353. The last case was argued with a wealth of learning by the most eminent members of the Bar of the State. The Court held that the act of 1871 (Revisal, sec. 211) was constitutional; that it did not deprive the court of any of its "inherent powers"; that the court had no power to disbar an attorney for causes other than those

prescribed by the statute. The opinion concludes: "It is a law of the land and ought to be observed." The question came before the Court again in *Haywood, ex parte,* 66 N. C., 1. *Pearson, C. J.,* after a careful consideration of the effect of the statute upon the power of the court to disbar an attorney, said: "The act of 1871 (Revisal, sec. 211) takes from the court the common-law power to purge the bar of unfit members, except in specified cases, and it fails to provide any other power to be used in its place. It is a disabling and not an enabling statute, the whole purpose seeming to be to tie the hands of the court, so, when one power is taken away, the court is not at liberty to fall back upon another which it had before adjudged to be ineffectual to accomplish the end proposed." This case, as *Schenck, ex parte,* was argued by Mr. Moore, Mr. Phillips and Mr. Merrimon, counsel eminent for their learning, industry and loyalty to their profession. The Court was evidently desirous of exerting such power as had been left to it by the Legislature to compel a derelict attorney to discharge a conceded duty or be disbarred. It came to the conclusion that "the Legislature had tied its hands." We do not entertain any doubt that, in the absence of restrictive legislation, the courts have an inherent power to strike from their rolls names of attorneys who are found by reason of their conduct unfit and unworthy members. The decisions to this effect are numerous and uniform. An instructive opinion upon the question is to be found in *Penobscot Bar v. Kimball,* 64 Me., 140. *Dickerson, J.,* says: "An attorney is an officer of the court, as appears from the terms of his oath of office, to wit: 'You will conduct yourself in the office of an attorney according to the best of your knowledge and discretion, and with all good fidelity, as well to the courts as your clients.' The order of his admission to the bar is the judgment of the court that he possesses the requisites, legal qualifications and good moral character to entitle him to practice the profession of an attorney at law. From the moment of his entrance upon the duties of his office he becomes responsible to the court for his official misconduct. The tenure of his office is during good behavior, and he can only be deprived of it for misconduct ascertained and determined by the court, after oppor-

tunity to be heard has been afforded. In the absence of specific provisions to the contrary, the power of removal is commensurate with the power of appointment. * * * If a good, moral character is indispensable to entitle one to admission to the bar, it is obvious that the necessity for its continuance becomes enhanced by the conflicts, excitements and temptations to which the practitioner is daily liable. For his official misconduct there is no power of removal but in the court. This power is therefore at once necessary to protect the court, preserve the purity of the administration of justice and maintain the integrity of the bar. * * * It is a mistaken view of this subject, as the foregoing authorities show, to conclude that an attorney at law can only be disbarred for acts done 'in his office as attorney' or 'with the courts,' in the term of his oath of office. On the contrary, an attorney may be guilty of disreputable practices and gross immoralities in his private capacity and without the pale of the court which render him unfit to associate with gentlemen, disqualify him for the faithful discharge of his professional duties, in or out of court, and render him unworthy to minister in the forum of justice. When such a case arises, from whatever acts or causes, the cardinal condition of the attorney's admission to the bar, the possession of a 'good moral character,' is forfeited, and it will become the solemn duty of the court, upon a due presentment of the case, to revoke the authority it gave the offending member as a symbol of legal fitness and moral uprightness, lest it should be exercised for evil or tarnished with shame." *Whipple, C. J.,* in *Mills, ex parte,* 1 Minn., 393, says: "Should this Court, after being officially advised that one of its officers has forfeited the good name he possessed when permitted to assume the duties of his office, still hold him out to the world as worthy of confidence, they would, in my opinion, fail in the performance of a duty cast upon them by the law. It is a duty they owe to themselves, to the bar and to the public to see that a power which may be wielded for good or for evil is not entrusted to incompetent or dishonest hands. The extreme judgment of expulsion is not intended as a punishment inflicted upon the individual, but as a measure necessary to the protection of the public, who have a right to demand of us that

no person shall be permitted to aid in the administration of justice whose character is tainted with corruption." *Ex parte, Smith,* 28 Ind., 47; *Fletcher v. Daingerfield,* 20 Cal., 427; *ex parte, Brown,* 2 Miss., 303. In *State v. Kirke,* 12 Fla., 278, *Wescott, J.,* writes an exhaustive opinion, reviewing the statutes and decisions in England and in this country. *Percy's case,* 36 N. Y., 651; *In re Wooley,* 74 Ky., 95; *People v. Goodrich,* 79 Ill., 148; *In re Smith,* 85 Pac. Rep., 584. These cases all hold that for dishonesty or other conduct in his official character, showing an absence of good moral character, the court has the inherent power to disbar an attorney. Some of them, as in the case from Maine, hold that when without reference to his official duties or relations he is guilty of such conduct the court may strike his name from the roll of its attorneys. In none of the cases do the courts undertake to say how far the Legislature may limit this inherent and essential power. We do not deem it proper to express any opinion upon this delicate question. This Court having held, in the cases cited, that the act of 1871 (now section 211, Revisal) did not deprive it of its essential inherent powers in this respect, we do not care to disturb or draw the question into discussion. Whatever may have been the reasons for passing that statute, they no longer exist, having passed away with the conditions which brought them into action. We are sure that in re-enacting the statute in the Revisal of 1905 it was not the intention of the Legislature to unduly "tie the hand" of the court in preserving the high standard of conduct and character of our bar, which has been the pride of the people of the State. We have no doubt that if it appears to the Legislature that larger power in the courts is necessary to enable them to discharge their duty it will be prompt to confer it or to withdraw any undue restrictions now existing. Even for so laudable an end as purging the bar of unworthy members we should not exercise doubtful power or unnecessarily come into conflict with the Legislature. We do not entertain any doubt that, notwithstanding the restrictions placed upon the courts by the statute, ample power exists to protect them and their suitors from indignity, fraud, dishonesty or malpractice on the part of any of its officers in the dis-

charge of their official duties. It is manifest, however, that for
the commission of crimes which seriously affect their moral
character, but have no direct connection with their practical and
immediate relation to the courts, the power to disbar attorneys
is restricted by the express language of the statutes to convic-
tions of the class of crimes named in the statutes. To give any
other construction to the statute would not only do violence to
well-settled principles, but might lead to results not contem-
plated by the Legislature. If, as the record shows, the respond-
ent is guilty of the crime charged, his name should be stricken
from the roll of attorneys in this State, but as we have seen, no
power now exists in the court to do so. We were requested by
the committee on grievances to express our opinion to this ex-
tent, to the end that such further legislation may be had as
would enable the State Bar Association to aid the courts in
removing from the bar unworthy members. How far it is wise
to define the crimes or confine cases to the mode of punishment
as the basis for compulsory action is for the consideration of
the Legislature. Like all legislation of general application, it
is difficult to avoid danger of miscarriage in individual cases.
We have been favorably impressed with the method of procedure
followed in the *Kimball case,* 64 Me.; 140. There the accusa-
tion was made by the bar, and, upon a notice to show cause, a
reference was ordered to take testimony and report to the court;
whereupon, after argument, the case was disposed of upon its
merits. The disposition made by us of this appeal will not
prevent a further investigation of the fitness of respondent to
continue to be a member of the bar, if the restriction now im-
posed upon the court is removed. The action of the committee
on grievances is in all respects to be commended. They have
discharged their duty, and the failure to remove the respondent,
who, as the record shows, has been convicted of forgery, is no
fault of theirs. The case must be remanded to the Superior
Court of Buncombe, with direction to dismiss the proceeding,
unless the Legislature shall confer the power to investigate and
pass upon the motion to disbar for conduct showing that since
he received his license from this Court he has been guilty of
dishonest and criminal conduct. In this he has violated his

oath that he "will honestly demean himself in the practice of an attorney." In such investigation the record of his conviction will be competent evidence of his guilt. We do not hold that for the commission of a felony or other infamous crime, "showing him to be unfit to be trusted in the discharge of the duties of his profession" committed in another State, he should not be disbarred by the courts of this State. The question is not presented. It is obvious that a man who will commit forgery or perjury or be otherwise dishonest in one State is not a fit person to be a member of the bar of this State. We simply hold that the statute (chapter 941, Laws 1907) does not impose upon the court the duty or confer the power to disbar an attorney because he has been "convicted" in the courts of another State or the United States. We further hold that the language of section 211, Revisal, disables the court from disbarring for the conviction of crime in another jurisdiction, in the exercise of its "inherent power" to deal with its attorneys. We had occasion in *In re Applicants,* 143 N. C., 1, to consider the question of our power to refuse to license applicants who were shown to be of bad moral character, and the extent to which it was subject to legislative control. The subject was carefully considered and the opinion of a majority of the Court expressed in the able and exhaustive opinion of *Mr. Justice Hoke.* The Legislature promptly amended the statute, restoring to the Court the power to pass upon the moral character of applicants. Laws 1907, ch. 70. The long and honorable history of the Bar of North Carolina, distinguished by its learning, high personal and professional standards and its patriotic service to the State, is justly regarded by the people with pride. Prior to 1868 no court, so far as our public records show, had been called upon to exercise its power to disbar an attorney. The unfortunate conflicts of the period following the Civil War called attention to the necessity for defining more clearly the relative rights and powers of the bench and bar. The courts promptly and wisely recognized the power of the Legislature and the statutes enacted by it as the "State's collected will." If new conditions bringing a necessity for restoring the "inherent powers" to the courts exist, we should in the same spirit obey the law, with the assurance that

such legislation will be enacted as will enable the Bar Asso-
ciation, with the aid of the court, to remove from the roll the
names of men who are *guilty* of forgery, whether committed in
this State or elsewhere. We do not see any good reason why,
if the law be so changed as to permit it, the Court, in this pro-
ceeding, may not investigate the serious question presented by
the action of the committee on grievances, and proceed, after
full hearing, to dispose of it by making such order as will pre-
serve the integrity and purity of the bar, so far as respondent
is concerned. While we do not construe his demurrer to the
evidence as an admission of his guilt, because under the statute
it was not open to him to deny it, we are of the opinion that if
power is conferred upon the court by the Legislature, it is due
to him and the Bar of the State that a full investigation be had,
and that he either be relieved of the charge resting upon him or
that he be disbarred and his name stricken from the roll of
attorneys. There seems to be a misconception of the plain lan-
guage of the statute. In unmistakable terms it says that upon
*conviction* of the crime the court *must* disbar. No question
of the respondent's *guilt* is or can be presented. The judge did
not and could not possibly give the respondent leave to answer
denying the commission of the offense. He had no power to
hear or determine any such question. If the power of the court
is limited, it is because the Legislature has done so. The same
power can remove the limitation. It is not a question whether
men guilty of felony shall practice law in North Carolina, but
whether the court shall exercise power of which the Legislature
has deprived them. It was attempted, in *Moore, ex parte;
Biggs, ex parte,* and *Schenck, ex parte,* with us, and the Legis-
lature "tied the hands" of the Court. *Ex parte, Garland,* 71
U. S., 333. We must declare the law as we find it to be, with-
out fear of criticism. The courts of this State will exhaust their
power to purge the bar of unworthy members, but dare not
assume power to do so.

The cause will be remanded to the Superior Court of Bun-
combe, with direction to set aside the order disbarring respond-
ent, and taking such further action in the premises as may be
in accordance with the law. The General Assembly convenes

on the first Wednesday in January, 1909, and, if it see fit, a very simple amendment to section 211 of the Revisal will clothe the court with full power to proceed.

Remanded.

Brown, J., dissenting: I am unable to agree with my brethren in the conclusion they have reached in this proceeding. It is brought at the instance of the Bar Association for the purpose of depriving the respondent of his right to practice law in the courts of this State. It is not criminal in its character, but purely civil; instituted, not for the purpose of punishment, but with the wholesome object of preserving the courts of justice from the official administration of a person unfit to practice in them. This is well settled in this country, as well as in Great Britain, where the courts have exclusive control over the admission as well as the disbarment of all practitioners before them. *Ex parte, Wall,* 107 U. S., 288; *State v. Wenton,* 5 Pac. Rep. (Oregon), 342; *State v. Finn,* 52 Pac. Rep. (Oregon), 759; *In re Crum* (North Dakota), 75 N. W., 257; *Scott v. State* (Texas), 24 S. W., 789.

Inasmuch as the proceeding is merely civil in its nature, the statute of 1907, under which it is brought, cannot be *ex post facto* in its character, and no such question can arise. *Watson v. Mercer,* 8 Peters, U. S., 110; *Ogden v. Sanders,* 12 Wheat., U. S., 267.

The charges preferred against the respondent, of a most serious character, are as follows: "(2) That the said I. N. Ebbs, on 4 December, 1903, was convicted in the United States Court for the Eastern District of Louisiana upon a certain bill of indictment, a copy of which is attached hereto, and that the said Ebbs was duly sentenced by the said court to a term of imprisonment, after the jury had returned a verdict of guilty. The crime of which he was so convicted was punishable by imprisonment in the penitentiary." The offenses of which the respondent was convicted, as set out in the petition, are as follows: "Unlawfully, knowingly and feloniously uttering and publishing as true a certain receipt. (3) Unlawfully, feloniously and knowingly transmitting and presenting to the General Land Office of the Department of the Interior of the United States a certain false

receipt. (4) Knowingly, unlawfully and feloniously transmitting and presenting for approval and payment a certain account and claim upon and against the Government of the United States. (5) Unlawfully, knowingly and feloniously, and with intent to defraud the United States, transmitting and presenting to the General Land Office a certain false and fraudulent voucher. (6) Knowingly, unlawfully and feloniously, and with intent to defraud the United States, presenting a certain false claim in violation of sections 5421 and 5438 of the Revised Statutes of the United States."

The record shows that respondent was duly tried by a jury at December Term, 1903, of the Circuit Court of the United States, at New Orleans, convicted and sentenced to pay a fine and to be imprisoned, and that he was imprisoned accordingly.

The respondent, by his demurrer to the petition, admits the truth of the facts stated therein; that is, he admits that he has been convicted by a jury of the offenses charged, punishable by imprisonment in the penitentiary.

It is useless to discuss the character of the crimes of which the respondent has been convicted. It will be admitted by all that one who has committed them should not be permitted to practice in the courts of the State. I concur with my brethren that our courts have power to investigate such charges and, if they are sustained, to disbar the respondent. But I differ from them in holding that any investigation is now necessary. The learned judge who heard this matter in the court below, when he overruled the respondent's demurrer, gave him leave to file an answer, which he declined to do. The respondent should have availed himself of his right to answer and deny the truth of the allegations contained in the bill of indictment, which is made a part of the petition, and should have insisted that the Court here investigate the truth of the charges preferred against him. If the judge declined to give him a trial the respondent could have appealed. Instead of doing that, when his demurrer was overruled he stands mute and refuses to answer. What honorable attorney, fit to practice in our courts, would stand silent in the presence of such accusations? He should have courted investigation. His refusal to answer and deny the truth of the accu-

sations in the bill, and to demand a trial upon them here, is
sufficient to justify his disbarment. What else could the judge
do but enter the judgment that was rendered? This Court has
held, as I understand the opinion, that the respondent cannot be
disbarred under section 1, subsection A, of the statute, because
the acts committed are not punishable by imprisonment in the
penitentiary by the laws of this State, and, secondly, because
the respondent has not been convicted in this State of a crime
punishable in its penitentiary. I think the construction placed
upon the act is too narrow entirely, and contrary to its spirit
and purpose. The statute declares: "Section 1. That an attor-
ney at law must be disbarred and removed for the following
causes: *(a)* Upon being convicted of a crime punishable by
imprisonment in the penitentiary."

It must be conceded that those words are broad enough to
cover a conviction and sentence to the penitentiary under the
laws of any State or of the United States. That being so, I
know of no canon of construction which requires a more re-
stricted construction to be given them. One of the recognized
rules of construction declares that, when possible, such construc-
tion should be given a statute as will effectuate the object sought
to be accomplished. The undoubted purpose of the act was to
remove from the legal profession those of its members who are
unworthy of the respect and confidence of the people. The end
to be attained is the protection of those who deal with members
of the bar, and not punishment.

The public welfare, as well as the respect due the profession
of the law, requires that its practitioners enjoy the confidence of
the community. "It is not enough," says the Supreme Court of
Connecticut, "for an attorney that he be honest. He must be
that and more. He must be believed to be honest. It is abso-
lutely essential to the usefulness of an attorney that he be enti-
tled to the confidence of the community wherein he practices."
*County Bar v. Taylor,* 60 Conn., 11.

My learned brother, *Justice Walker,* has written most impress-
ively of the high character which should be the standard for
our profession, and of the grave consequences which must follow
its debasement. I cannot hope to add anything to what he has
so well said. *In re Applicants,* 143 N. C., at p. 33.

It must be admitted that nothing can conduce more to lower and degrade the legal profession than to permit convicted felons from other States, who have served terms in their penitentiaries, to practice law in our courts. A term in the penitentiaries of the United States or of one of our sister States tends as much to impair a man's character and to destroy his usefulness as a legal adviser as a term in our own penal institution. Therefore I see no reason to suppose that the Legislature meant to exclude only North Carolina convicts from our courts. We must bear in mind that the General Assembly was not dealing with the administration of criminal law, but was declaring simply what class of persons should be excluded from a profession which is so intimately connected with the welfare of our people. I see no reason why we should not be willing to accept, under such circumstances, the judgments of the courts of other States and of the United States. In all other property matters we must extend to them the same faith and credit we give to our own. *Embry v. Palmer,* 107 U. S., 9. We have recognized this principle of comity in this State by holding that a witness convicted of forgery in Tennessee was incompetent in the courts of North Carolina, in a strong opinion by *Chief Justice Henderson. State v. Candler,* 10 N. C., 393. What reason, then, is there to suppose that the General Assembly did not intend to exclude from practice in our courts those who have been condemned as felons by the judgments and laws of other courts of our common country? It is practically impossible to try them over again in this State or to investigate the truth of the charges, for the evidence and the witnesses are beyond our reach. We must accept the judgment of other jurisdictions, or else we must let those who carry the odor of the felon's cell about them stand up and plead in our courts.

Again, if those only are to be excluded who commit crimes against the State of North Carolina we can never exclude those who are felons under the laws of the United States, even though they "be with treason damned."

Under the construction given the statute, an attorney of this State might be convicted and sentenced for larceny in a distant

IN THE MATTER OF EBBS.

State and return and pursue his profession unmolested, as it might be impossible to bring the witnesses here upon whose evidence he was convicted.

I am convinced that the language of the statute is comprehensive enough to exclude from our courts all who have been convicted in any court of the United States, or of any State thereof, of a crime which under the laws' of such jurisdiction is punishable by imprisonment in the penitentiary, a universally recognized method of punishing criminals. I feel sure such was the intent of the Bar Association in framing the act, and that such was the purpose of the General Assembly in enacting it, and I think it should be so construed.

CLARK, C. J., dissents upon the ground that the commission of a felony anywhere makes the party an unfit member of an honorable profession, and is a ground for disbarment under .our statute (Revisal, sec. 211). If it be conceded that the "conviction" thereof in another jurisdiction is not such proof of the fact as our statute contemplates, yet when the judge gave the respondent leave to file an answer denying the commission of the offense he did not do so. The charge, based on a certified judgment upon conviction in the United States Circuit Court, not being denied, must be taken as admitted in open court (Revisal, sec. 211), for this is a civil proceeding. Our courts could not "convict" the respondent for a felony committed elsewhere, with a view to punishment for crime, but in a civil proceeding for disbarment it could inquire as to the fact whether he committed the act alleged. Offered the opportunity in open court, he did not answer the charge, and, there being no issue raised, the court properly gave judgment.