(No. 18585.—Respondent ·disbarred.)
THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* GEORGE W. BRIGGS *et al.*—(EMIL W. SCHMUTZ,
Respondent.)

*Opinion filed April 21, 1928—Rehearing denied June 13, 1928.*

1. DISBARMENT—*information by Chicago Bar Association need
not be sworn to.*   Where the Chicago Bar Association, being a
regularly organized bar association, is the relator, the information
to disbar need not be sworn to under Rule 40, and as the bar is
an essential part of the judicial system of the State, Rule 40 is a
proper exercise of the authority of the court.

2. SAME—*demurrer admits truth of charges in information.*   A
demurrer to an information to disbar admits the truth of allega-
tions well pleaded, and where such allegations are sufficient to jus-
tify disbarment and the grounds of demurrer are insufficient the
respondent must be disbarred.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

EMIL W. SCHMUTZ, *pro se.*

Mr. JUSTICE FARMER delivered the opinion of the court:

At the October, 1927, term of court the relator filed an information against respondents, George W. Briggs and Emil W. Schmutz, asking their disbarment. The information alleges that Briggs was admitted to practice law October 2, 1907, and Schmutz was admitted in April, 1916, and from 1918 until about the first of May, 1926, respondents engaged in the practice of law in Chicago as partners, under the name of Briggs & Schmutz; that since 1904 a corporation known as the Wool Growers' Commission Company has been engaged at the Union Stock Yards at Chicago in selling, on commission, shipments of sheep and lambs from the western part of the United States; that the business of the commission company was acting as agent at the Union Stock Yards for shipments of sheep and lambs consigned to said company, and included selling such stock and remitting to the shippers, handling loss and damage claims, checking freight charges, collecting overcharges, etc. During the last eighteen years Miss A. C. Roche, an employee of the commission company, has been in charge of handling loss, damage and overcharge claims on behalf of the customers of said company; that when Roche was able to arrive at an adjustment of such claims with the railroad company that seemed fair to the shipper she made settlement and adjustment, but if such settlement and adjustment could not be made by her it was the custom to turn the claims over to an attorney for suit. The information avers that in 1918 Schmutz solicited the commission company to employ his firm in said matters; that during the year 1918, and at intervals thereafter until about 1922, Roche turned over to Briggs & Schmutz for adjustment a large number of claims; that the agreement between Roche and respondents was that upon such claims as were turned over to said firm, if collections were made, remittances should be made through the commission company so that said company could have an

effective and complete check on all such claims, and it was agreed that a small percentage of the fee charged by respondents should be transmitted, with the net amount collected in each instance, to the commission company. The information charges that for a short time such plan was followed, but soon afterwards respondents began to make direct remittances to the shippers or clients; that Roche asked an explanation of the change of the plan of remitting, and was informed by respondents that they preferred to deal directly with clients, and they continued to do so, forwarding, however, to the commission company a small percentage of fees charged in such matters, but that by reason of respondents dealing with clients directly the commission company was not able to keep any check on the action of respondents in the matter of collections of claims turned over to them by the commission company. The information avers that in 1922 one of the shippers of stock to the Wool Growers' Commission Company of Yakima, Washington, complained to the commission company that respondents had collected an account in his favor against the railroad company and had not remitted the same to him. Thereupon Roche made an investigation and found the complaint to be true and called upon Briggs for an explanation. Briggs admitted such remittance had not been made and said it was an oversight and thereafter remitted the net collection to the customer. The money was retained by respondents for more than a year before the remittance was made. Thereupon Roche demanded of respondents a full and complete report and accounting of all matters placed in their hands by the commission company. At that time the commission company had placed in the hands of respondents for collection or suit upwards of one hundred claims against various railroads, which claims were from $10 to $7000 and aggregated over $80,000. Respondents made a partial report in 1922, which report as checked by the commission company seemed substantially correct, although

subsequent checking revealed some errors and mistakes therein. The information avers that during the years 1924, 1925 and 1926 the commission company continued to demand reports from respondents on said matters; that they failed to comply with said demands and during said time the commission company undertook to make an independent investigation; that at the completion of the investigation it was found that respondents had collected a large amount of money which had not been transmitted to the various shippers and customers, and thereupon a demand was made upon them for an accounting on such matters, but they failed to make such an accounting, and thereupon on the 11th day of February, 1927, the commission company made complaint to the grievance committee of the Chicago Bar Association; that respondents were notified of the complaint, answered it, and thereafter attended various hearings held by the grievance committee, during which hearings it was disclosed that respondents had made a number of collections on such claims, and, as relator is informed and believes, had fraudulently converted the same to their use. The information charges that respondents deposited moneys collected by them on said claims in a bank, which was the personal bank of respondents, and the moneys were checked out of said bank on checks signed, respectively, by each of the respondents; that they dissolved their partnership and closed out their bank account May 1, 1926, by checking out for their own personal use the balance that was therein contained. The information sets out a large number of claims turned over by the commission company to respondents for collection, aggregating over $80,000. The information alleges relator is informed and believes and charges that respondents made collection of a number of the claims which were transmitted to the customers or shippers but that they made collection of a number of other claims set out in the information, aggregating over $5000, which they did not transmit to the customers or shippers

but which they retained fraudulently and converted to their own use. The information avers that during the hearings before the grievance committee of the Chicago Bar Association respondents admitted the collection of the aforesaid sums of money and admitted they had failed to transmit the same either to the shipper or the commission company and promised to make restitution in the matter but had not done so. The information charges respondents have been guilty of malfeasance in their office as attorneys, and asked that their licenses be revoked and canceled and their names stricken from the roll of attorneys.

This court entered an order allowing the information to be filed and entered a rule that respondents answer it by the first day of the December term. Briggs filed no answer but moved the court to strike his name from the roll of attorneys, which motion was allowed. Schmutz filed no answer but demurred to the information. The grounds of demurrer were, that the information was not sworn to by anyone; that it charged a criminal offense, was uncertain and contradictory, and that an issue should have been made by the Wool Growers' Commission Company. The case is therefore submitted upon the information and the demurrer. Under the practice of this court, if the demurrer is sustained a judgment will be entered dismissing the information, and if the demurrer is overruled, final judgment will be entered striking the name of Schmutz from the roll of attorneys.

The information is in all respects regular and not subject to any objections made on demurrer. The Chicago Bar Association is the relator, and in such case the information is not required to be sworn to by Rule 40 of this court. It is not uncertain or contradictory but definitely charges respondents with unprofessional conduct. It made a case requiring an answer and hearing if Schmutz was disposed to deny its truth. By his demurrer he admits the truth of the allegations well pleaded. If the information

had been filed by the owners of the claims alleged to have been collected by respondents it would have been necessary to have sworn to the information. The Wool Growers' Commission Company complained to the Chicago Bar Association, and its grievance committee notified respondents and caused a hearing to be held, after which the information was filed at the relation of the bar association. There can be no doubt the court had the power to enact Rule 40. The bar is an essential part of the judicial system of our State. A very good history of the admission of attorneys and powers of the court is found in *In re Day,* 181 Ill. 73. In that case the court said in part: "This court has 'an inherent right to see that the license is not abused or perverted to a use not contemplated in the grant,' (*People* v. *Goodrich,* 79 Ill. 148,) and courts, in the absence of a statute, have inherent and summary jurisdiction over attorneys practicing at their bars. * * * 'They [attorneys] hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court, after opportunity to be heard has been afforded.'" In *People* v. *Chamberlain,* 242 Ill. 260, the court said: "The power to disbar in a proper case those who have been proven unworthy members of the legal profession is indispensable to the maintenance of a high standard of professional conduct. The exercise of this power cannot be made to depend upon the inclination to prosecute by the particular client who may happen to be the victim of an attorney's misconduct." The information was not required to be sworn to by the relator. It charges definitely misconduct of Schmutz, which being admitted, not only authorizes, but requires, his disbarment.

The demurrer therefore is overruled and final judgment entered disbarring and striking from the roll of attorneys the name of Emil W. Schmutz.        *Respondent disbarred.*