THE PEOPLE *ex rel.* Chicago Bar Association, *vs.* JOHN A. SILHA.

*Opinion filed December 21, 1911.*

DISBARMENT—*case against an attorney must be clear to justify disbarment.* To justify disbarring an attorney the charges against him set out in the information must be established by clear and satisfactory evidence, and it is not sufficient that there is some evidence tending, if uncontradicted, to establish the charges, but which is, in fact, contradicted by the testimony of the respondent, which is corroborated in many particulars.

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

CRUICE & LANGILLE, (O. J. C. WRAY, of counsel,) for respondent.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an information filed in this court on the relation of the Chicago Bar Association against John A. Silha, an attorney of this court, for the purpose of disbarring the respondent and having his name stricken from the roll of attorneys.

The information contains two counts, the first of which charges that the respondent, on June 7, 1906, was employed as an attorney by Franciszka Marynowski Potempa to collect a claim due her from a fraternal benefit association, arising on a benefit certificate issued upon the life of Ludwig Marynowski, for the sum of $600. The agreement between respondent and Mrs. Potempa was in writing, and is as follows:

"This agreement, made this 7th day of June, A. D. 1906, witnesseth: That the death certificate of Ludwig Marynowski, No. 1893, is to be sued upon by John A. Silha, and of the judgment, if recovered, three hundred dollars is to be paid to Franciszka Potempa, formerly Marynowski, and the balance to be paid to John A. Silha for his services.          JOHN A. SILHA,
                                   POTEMPA FRANCISZKA."

It is charged in this count that respondent, on May 29, 1909, made a settlement of said claim for the sum of $400 and thereafter appropriated the money to his own use, and refused, after frequent demands, to pay it over, or any part of it, to his client.

The second count in the information charges that on the 27th day of December, 1907, respondent was employed by one Stanislaw Romanovski to institute and prosecute two certain suits in favor of himself and wife against one Schlechta, and that respondent agreed to immediately begin and prosecute said suits; that said suits were for damages for personal injury; that respondent received, at the time of such employment, $50 for his fees and with which to pay costs of instituting said suits. It is charged that respondent neglected and refused to institute said suits, but often told Romanovski that such suits had been started and would come on for hearing in due course; that respondent retained the $50 and did not commence the said suits, or either of them, until the right of action was barred by the Statute of Limitations.

The answer of respondent to this information sets out in detail his dealings with his clients mentioned in the two counts of the information, and specifically denies all misconduct in his relations and dealings with the parties mentioned. The cause was referred to a special commissioner to take the evidence and report his findings. The commissioner found from the evidence that the charges were sustained and that respondent's conduct was unprofessional and calculated to bring the profession of the law into disgrace and contempt. The cause is submitted for our consideration upon the information and the answer thereto, the report of the commissioner and exceptions thereto, together with a transcript of the evidence heard by the commissioner.

The transactions set out in the two counts of the information are wholly distinct, and the evidence heard by

the commissioner shows that the two transactions have no relation to each other. The evidence bearing upon the different counts will consequently require separate treatment.

The evidence bearing upon the charge contained in the first count is, in substance, as follows: Respondent was admitted to the bar by this court on June 16, 1897. He did not begin the active practice for some time after his admission. At the time of the hearing before the commissioner he had been engaged in the practice for about eight years. It is admitted, and was so found by the commissioner, that prior to the bringing of the present charges against him he had always sustained a good reputation for honesty and upright conduct in his office as an attorney at law. All of the persons connected with the transactions set out in both counts of the information, including respondent, were Poles. Mrs. Potempa was formerly Mrs. Marynowski, wife of Ludwig Marynowski, who in his lifetime held a benefit certificate in the Polish Roman Catholic Union, a fraternal beneficiary society which paid death benefits to its members. Marynowski at the time of his death held a certificate in the Catholic Union in favor of his wife for $600. At the time of his death the Polish Roman Catholic Union was financially embarrassed and soon after went out of business because of its inability to meet its obligations. The widow afterwards married Stanislaw Potempa. On June 7, 1906, the claimant under the benefit certificate placed the same in the hands of respondent for collection under the written contract above set out. The respondent testifies,—and he is not contradicted on this point,—that at the time the claim was placed in his hands he spoke to Mrs. Potempa in the Polish language in the presence of her husband and translated to them the meaning of the contract, which they both fully understood. Suit was brought by respondent on the benefit certificate against the Polish society in the municipal court of Chicago on February 15, 1907. Respondent diligently prosecuted said

suit, and on June 17, 1907, recovered a judgment against the society for $600. It appears that the claim was contested and that respondent was in court a great many times in connection with said suit. After judgment was rendered the Polish society prayed an appeal to the Appellate Court, which was granted and time fixed for the filing of an appeal bond and for a stenographic report of the evidence. An appeal bond was filed, signed by Wincenty Jaworski, who was president of the defunct Polish society. Afterwards, on July 14, 1907, on motion of respondent the appeal bond was stricken from the files and that case was at an end. Execution was issued and returned no property found. Respondent then brought an action against Jaworski on the appeal bond. This suit was stubbornly defended. On the trial of this case it became necessary for respondent to testify as a witness, whereupon he withdrew as counsel and William O. LaMonte was substituted as attorney for the plaintiff. The suit on bond was pending from February until December, 1908, during which time there were numerous appearances before several judges of the municipal court. A judgment was finally obtained on the 28th day of December, 1908, against Jaworski. During the pendency of this suit respondent paid out of his own money about $30 in court costs. After judgment was obtained against Jaworski he sued out a writ of error from the Appellate Court and made preparation to present the case to that court. After the writ of error had been sued out, which does not appear to have been made a *supersedeas,* respondent caused execution to be issued against Jaworski and a levy was made upon some of his personal property. The evidence shows that respondent employed watchmen to look after the property levied upon, and they were in and about Jaworski's house for four days and four nights. Jaworski is a witness, and testifies in this case that he has a bitter feeling against respondent because of the persistent measures that he took to collect the judgment against him. No

money was ever collected on the judgment against the Polish society. The evidence shows that Jaworski had in his hands $312 that belonged to the Polish society and which he might have properly applied on the claim in suit. It also appears that one of the local lodges of the Polish society had $87.76 on hand which had been collected from the members and which was due to the Polish society. Jaworski was apparently of doubtful solvency. In this situation negotiations between respondent and Jaworski and his attorney were commenced with the view of compromising and settling the claim for $400. Respondent insisted on $500 being paid, but finally agreed that if it was satisfactory to Mrs. Potempa he would accept $400 in full satisfaction of the claim. The evidence shows that respondent had an interview with his client in which the whole situation was gone over, and the conclusion was reached that the proposition to settle for $400 should be accepted. Respondent testifies that at the time of this interview he made a further contract with Mrs. Potempa, by which it was agreed that he was to pay her $200 of the $400 and retain $200 for his compensation. Mrs. Potempa, when questioned in reference to this contract, admits that respondent saw her and talked the matter of a settlement over, but she says that she does not remember agreeing to accept $200 for her interest in the claim. On May 29, 1909, the settlement for $400 was agreed to by respondent and Jaworski, and at that time $200 was paid to respondent, and afterwards, on June 1, the remaining $200 was paid. Respondent testifies that at the time the settlement was effected Jaworski requested him to hold this money and not enter a satisfaction of the judgment until the $87.76 could be collected from the local lodge that owed that sum to the Polish society, and that to oblige Jaworski and aid him in collecting that money to reimburse himself respondent agreed to, and did, hold the money and left the judgment unsatisfied until he was notified by Jaworski that

the collection had been made. Jaworski corroborates respondent on this point and no one contradicts him. Respondent held the $400 paid him by Jaworski for two or three weeks and until Jaworski notified him that the local lodge had paid the $87.76. The evidence shows that Mrs. Potempa manifested a great deal of impatience and anxiety about the collection of this claim; that she called on respondent a great many times before he received any money, apparently with the expectation that she would receive the money on her claim. She is wholly unacquainted with the English language and knows nothing about the procedure of collecting a claim by suit. The respondent testifies that within a short time after he had been notified that the $87.76 had been paid to Jaworski he called on Mrs. Potempa and told her that he had collected the $400 and offered to settle with her by the payment of $200. He testifies that he called on her a second time; that he had the $200 for her in twenty-dollar bills and offered to pay it to her if she would accept it in satisfaction of her claim, and that she refused to accept the money unless he would pay her $320. The $20 she claimed she had paid to another person to bring the matter before the Chicago Bar Association. The testimony is in irreconcilable conflict in reference to the transactions and conversations between the respondent and Mrs. Potempa and an agent she sent to see respondent. The evidence on behalf of relator tends to show that respondent was called on frequently during July and August and payment of the money demanded, and that he always claimed he had spent the money and could not pay it. Evidence of these conversations is given by Mrs. Potempa and her agent, Wengierski, and if these statements are to be accepted as true they would sustain the finding of the commissioner and justify this court in striking respondent's name from the roll. Respondent denies positively that he used the $200, which he claims is all he had belonging to his client, and testifies that he had this

amount on hand at all times and was ready to pay it over
if he could obtain a release from his client; that he never
used the $200, or any part of it, but kept the same for Mrs.
Potempa, but she would not accept it and always demanded
$300. It is very clear that there was a dispute between
the parties as to the amount due Mrs. Potempa. Wengier-
ski, who is not a licensed lawyer, was employed by Mrs.
Potempa to collect the claim from respondent and he was
to receive $100 for his services. It was he who construed
the original contract between respondent and Mrs. Potempa
as entitling her to $300. It was Wengierski who conceived
the idea of applying the persuasive influence of a complaint
to the Chicago Bar Association in order to protect the in-
tegrity and honor of the legal profession and incidentally
to improve his chances of making $100. It was Wengier-
ski who filed the complaint against respondent, and there-
after he appeared not only as the principal witness in the
case, but he has saved the attorney for the relator much
labor in assembling testimony. His conduct throughout
this whole transaction manifests such a suspicious activity
that no one can read this record and escape the conclusion
that he was more anxious to make $100 than to rid the
legal profession of an unworthy member. After the com-
plaint had been filed with the bar association respondent
settled with Mrs. Potempa on her own terms and gave her
a note for $300 with personal security, which was paid,
with interest, when the same matured a few months later.
Respondent testified that he had the $200 but did not have
the other $100; that it was necessary to borrow, and that
Mrs. Potempa agreed to accept a note with security, and
that respondent gave a note for $300 and turned the $200
in cash over to his surety. This is not disputed. The in-
ference is that the surety wanted the use of the $200 until
the note matured, and Mrs. Potempa was willing to settle
on that basis, and she expresses herself now as entirely

satisfied and as having no cause for complaint against respondent.

Upon the vital issues under the first count the evidence is conflicting. Respondent gives a reasonable account of his dealings with Mrs. Potempa, and in many respects his version of the matter is corroborated. The case for the relator depends almost entirely on the testimony of Mrs. Potempa and Wengierski. When the unimpeachable previous good character of respondent is considered in connection with his testimony, corroborated, as it is, in many important particulars, our conclusion is that the evidence does not so clearly preponderate in favor of the relator as to justify a finding that respondent is guilty as charged in the first count of the information. The rule established in this State is clearly expressed by this court in *People* v. *Matthews,* 217 Ill. 94, where, on page 103, it is said: "A careful consideration of the testimony leaves us unable to say that the charges set forth in the information filed against the respondent have been sustained by the character of proof required to justify the legal conclusion of guilt. The punishment to be inflicted by disbarment of an attorney is the destruction of his professional life. Only clear and satisfactory proof can justify a decision from which would flow consequences of such grave nature. In *People ex rel.* v. *Harvey,* 41 Ill. 277, we said that to justify the infliction of such heavy punishment as disbarment 'the case must be clear and free from doubt, not only as to the act charged, but as to the motive.' In *People ex rel.* v. *Barker,* 56 Ill. 299, wherein a judgment of disbarment was asked, it was said that the law undoubtedly requires 'evidence of clear and positive character  *  *  *  to establish a charge so grave in its nature.' We find nothing in the record which will warrant us in attaching greater credence to the testimony of Mrs. Manupelli than to that of the respondent. His testimony is corroborated to an extent equal to that of hers. That he is guilty of the charges

specifically set forth in the information upon which he is being tried is not shown by evidence which is clear and positive and free from reasonable doubt."

The charge in the second count of the information is based on a transaction between respondent and Stanislaw Romanovski. In 1907 Romanovski was engaged in the grocery business in a building which was rented from one Schlechta. Romanovski had trouble with the landlord over the lease and consulted the respondent in reference thereto. The controversy seems to have been over Romanovski's right to longer remain in the building under the lease. He told the respondent that the landlord had come into his place of business and had created disturbances, and had assaulted or threatened to assault his wife and had injured his business, and that he wanted to employ respondent to bring two suits for damages against the landlord. Romanovski testifies that he gave respondent $50, which was to pay the costs for starting the two suits. Respondent testifies that he received the $50 as a retainer fee and that $50 more was to be paid before any suit was to be commenced, and out of the last $50 respondent agreed to advance the costs. At the time respondent was employed and received the $50 the following receipt was executed:

"CHICAGO, *December 27, 1907.*

"Received of Stanislaw Romanovski fifty no/100 dollars, ac. fees in Romanovski vs. Schlechta.
$50.00                                  JNO. A. SILHA, *Att'y.*"

Respondent testifies that he had frequently advised Romanovski in reference to his rights under the lease before the $50 was paid. It also appears that afterwards a niece of Romanovski received a personal injury about the rented premises for which it was thought Schlechta would be liable in damages. Respondent was also consulted in reference to this matter and gave it as his opinion that she had a good cause of action against Schlechta. The testimony of Romanovski and respondent is conflicting as to the under-

standing between them at the time the $50 was paid. A short time after the payment of the $50 Romanovski came to respondent and accused him of selling out to Schlechta. He said to respondent: "You are bought by these people. These people are Bohemians and you are Bohemian and I am Polish." The basis for this grave charge against respondent was that Romanovski had either seen respondent and Schlechta talking together on the street or had heard that they had spoken together on the street. Respondent thereupon told Romanovski that he would withdraw and that he had paid him enough for the services rendered up to that time. Romanovski testifies that he paid the $50, not as fees but to cover court costs in commencing two suits against Schlechta, and that respondent frequently told him that the suits had been commenced, and that afterwards, upon learning that no suit had, in fact, been commenced, he demanded the return of the $50, which respondent refused to pay. Relator's case under this count rests entirely upon the testimony of Romanovski, which is contradicted in all material respects by the testimony of respondent. We think the written receipt given at the time the money was paid tends slightly to corroborate respondent, and that the testimony of Romanovski is not sufficient to warrant us in finding that the second count in the information is sustained.

Our conclusion upon the whole case is, that there is not in this record that clear and satisfactory evidence which would warrant this court in inflicting the severe penalty of disbarring respondent.

The rule against respondent to show cause will be discharged.

*Rule discharged.*