1870.] The People ex rel. Shufeldt v. Barker. 299

Opinion of the Court. Syllabus.

The People of the State of Illinois *ex rel.* George A. Shufeldt, Jr.,

*v.*

Joseph N. Barker.

56   299<br>100a  1  48

1. ATTORNEY AND CLIENT — *confidential communications.* Communications made to a counselor, attorney or solicitor, when made to him in the character of a legal adviser, are to be protected, as the privilege of the party asking the advice. The courts will never compel, or even allow, an attorney to disclose facts thus communicated to him by his client. Such protection from disclosure is the privilege of the client, not of the attorney, and will be extended to all communications passing between attorney and client, where the latter seeks professional advice, whether the subject of advice is pending in suit or not.

2. SAME — *release by one of a firm.* Where an attorney has received confidential communications from a partnership firm, one member of the firm can not release him from his obligation of secrecy. It is the privilege of all, and, before the attorney can properly disclose such communications, he must have the consent of every member of the firm.

3. SAME — *mal-conduct on the part of an attorney — degree of proof required.* The name of an attorney should not be stricken from the roll for alleged misconduct in office, except upon a clear preponderance of proof against him. Consequences so serious should not be visited upon him in a doubtful case, or upon a mere preponderance of evidence.

4. An attorney at law had been doing business in that capacity for a party, and also negotiated a loan for the latter, for which the attorney became personally liable. During the time of some of these transactions, the attorney learned from such party certain facts concerning his private

business affairs, which he disclosed in his testimony in a suit by a third person against his client. In a proceeding to strike the name of the attorney from the roll, for alleged misconduct in making such disclosure, on the allegation that the matters were confided to him in his character as an attorney, by his client, it was *held,* the testimony was not sufficient to support the prosecution, as it left the question in doubt whether the facts disclosed came to the attorney's knowledge while the relation of client and attorney existed, or while the relation of debtor and creditor alone existed between the parties.

5. In case of uncertainty, however, as to the capacity in which the attorney learned the facts about which he proposed to testify, or if any doubt would arise in the mind of a reasonable person as to the propriety of making the disclosure, he should, at least, have submitted the question to the court for its advice.

APPLICATION to strike the name of an attorney at law, from the roll, for alleged misconduct in office.

Mr. GEORGE A. SHUFELDT, Jr., the relator, *pro se.*

Mr. S. A. IRVIN, for the respondent.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

We know of no exception to the rule, that communications made to a counselor, attorney or solicitor, when made to him in the character of a legal adviser, are to be protected, as the privilege of the party asking the advice. The rule is founded on principles of public policy. It has been found necessary to the protection of persons surrounded and embarrassed by difficulty, to the end that they may have the advice and counsel of persons skilled in the law, upon a complete disclosure of all that pertains to the transaction that affects their interest, property or liberty, with the full assurance that the communications thus made are as safe with their legal adviser as within their own breasts. The courts will never compel, or even allow, an attorney to disclose facts thus communicated to him by his client.

It has uniformly been held, that facts communicated to a legal adviser are the privilege of the client, and not that of the attorney.   This protection will be extended to all communications passing between attorney and client, where the client seeks professional advice, whether the subject of advice is pending in suit or not.   *Greenough* v. *Gaskell*, 1 Myl. & Keen. 98.

If an attorney should so far forget his professional duty as to voluntarily offer to give in testimony facts communicated to him by his client, without the express consent of the client so to do, " a short way of preventing him would be by striking him off the roll."   Earl Cholmondeley's Case, 19 Ves. 261.

For any willful breach of professional obligation on the part of an attorney, the court has undoubtedly the right to strike the name of such attorney from the roll.   The court has not only this power, but it is its duty, when a proper case is presented, to exercise this power.   *Emory* v. *Long*, 9 East, 481; 1 Myl. & Keen. 98; *Jackson* v. *French*, 3 Wend. 337; *Coveney* v. *Tannahill*, 1 Hill, 33 ; *Ex parte Burr*, 9 Wheat. 529.

One member of a firm can not release an attorney from his obligation.   It is the privilege of all, and, before he can properly testify, the attorney must have the release and consent of every member of the firm.

The relator has exhibited but one single charge against the respondent, viz.: professional misconduct in willfully disclosing confidential facts confided to him in his character as an attorney by his clients.

We have looked carefully into the affidavits presented, to ascertain whether the respondent is guilty or not.

The evidence thus presented shows that the respondent was at one time the advising counsel of the firm of A. F. Croskey & Co., of which firm the relator, Shufeldt, was formerly a member.   In that capacity he did learn many of the details of the private business of that firm.

It also appears, from the affidavits, that the respondent at one time negotiated a loan for the firm of A. F. Croskey &

Co., for which he became personally liable; that he experienced much difficulty in getting his debt paid, and, in endeavoring to do so, he did learn many facts concerning the private business transactions of the firm.

The evidence leaves it doubtful whether the facts stated in the testimony of the respondent, of which complaint is made, were obtained by him while the relation of client and attorney existed between the parties, or whether he learned the facts to which he testified while the relation of debtor and creditor, only, existed between them. The evidence on this question is by no means harmonious and satisfactory.

Under this uncertain state of facts, it would unquestionably have been in better taste for the respondent to have declined to testify, unless compelled to do so by the court. The position of an attorney thus situated is a delicate one, and if any doubt existed or could exist, in the mind of any reasonable man, as to the propriety of his giving testimony under the circumstances, he ought at least to have submitted the question to the court for its advice. It was, perhaps, after all, only a question of propriety with himself, in which, however, we think he greatly erred, in the questionable position that he occupied, in his decision. We cannot say, however, that we find any moral turpitude in his conduct. The respondent may have honestly believed that he learned all the facts to which he testified before the master, from the firm of A. F. Croskey & Co., while the relation of debtor and creditor alone, existed, between them. The proof shows that such a relation did exist between the parties, and it is possible that the respondent did so learn all the facts to which he testified.

The respondent, in express terms, denies the charge exhibited against him, and to overcome this express denial there ought to be required more than a mere preponderance of evidence. A charge so grave in its character, and so fatal in its consequences, ought, certainly, to be proved by what the law denominates a clear preponderance of the evidence. Such evidence is wanting in this case.

The consequences of a conviction in a case like this are most disastrous to the party accused, and no slight evidence will warrant the conviction.   Even if we should hold that the party has been guilty of some slight indiscretion, it does not follow that his name ought to be stricken from the roll of attorneys.

A man's profession is sometimes all his means of a livelihood.   It has cost him much labor, and intense study through many weary years.   It is to him valuable capital, and he ought not to be denied the right to exercise its duties and receive the emoluments attached thereto, except upon clear proof of willful and corrupt professional misconduct.

The case of *Ex parte Burr*, 9 Wheat. 530, is so exactly in point, that we adopt the language of the court.   In delivering the opinion of the court, Mr. CHIEF JUSTICE MARSHALL says: " On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise.   The right to exercise it ought not to be lightly or capriciously taken from him.   On the other, it is extremely desirable that the respectability of the bar should be maintained and that its harmony with the bench should be preserved.   For these objects some controlling power, some discretion, ought to reside in the court.   This discretion ought to be exercised with great moderation and judgment, but it must be exercised."

Whenever a proper case has been presented to this court, it has not hesitated to exercise this power, however painful the duty.   *The People, etc., v. Ford*, 54 Ill. 520.   We fail to find in this record, evidence of that clear and positive character that the law undoubtedly requires to establish a charge so grave in its nature as the one exhibited against the respondent, and while we may be of opinion that, under all the circumstances, it was in bad taste for the respondent to offer himself as a witness, we can not hold that he was thereby guilty of any willful professional misconduct.

The rule must be discharged.

*Rule discharged.*