*In the Matter of Disbarment Proceedings Against* J. L.
BROWN.

1. DISBARMENT PROCEEDINGS — *Suspension of Attorney—Appeal*—An appeal lies to the supreme court, from an order of the district court, suspending an attorney from practice, pending a trial on information for his disbarment.

2. SAME—*Opportunity to be Heard*—A defendant in a disbarment proceeding is not entitled to twenty days' time, the time allowed to answer the ordinary summons under the code, but may be cited to appear and answer within any time that gives him a reasonable opportunity to be heard.

3. SAME—*Change of Venue*—The provision of § 3, of ch. 5, of the act of congress, approved December 21, 1893, which authorizes the supreme court or the chief justice to designate any judge to try a particular case, or cases, in any district, when the judge of said district is biased or prejudiced in the case, does not take away from a party his right of change of venue, under § 3930 of the Statutes of Oklahoma, of 1893, and his application for such change of venue cannot be refused on the ground that his proper remedy would be an application for a change of judge.

*Error from the District Court of Oklahoma County.*

*Grant Stanley*, for plaintiff in error.

*Charles H. Eagin, Huger Wilkinson* and *J. C. Strang*, for defendant in error.

The opinion of the court was delivered by

BIERER, J.: An appeal is brought to this court, from an order made by the district court of Oklahoma county, suspending the plaintiff in error, J. L. Brown, pending his trial on charges preferred against him by William A. Wallace, for the purpose of disbarring said Brown from practicing as an attorney at law. The sworn information was filed by Wallace, in the district court, on the 3d day of December, 1894, and on that day a notice was issued, with a copy of the charges

and information attached, and directing Brown to appear in the district court of Oklahoma county and answer the same on the 6th day of December, 1894, and this notice was personally served on Brown on the day it was issued. Brown appeared in the action on December 6, 1894, and filed his motion to set aside the notice, because the time allowed in the notice was shorter than the time allowed him by law, he claiming that the proceeding was a civil proceeding, and that he was, under our civil code, allowed twenty days from the return day of the notice in which to answer or demur. This motion was overruled, and subsequently Brown filed an application for a change of venue on account of the bias and prejudice of the presiding judge, Hon. Henry W. Scott, against him. This application was overruled, and on December 22, 1894, an order was made suspending said Brown from practice, pending the trial of the cause, from which order Brown takes this appeal.

The defendant in error claims that appeal does not lie, from this temporary order of suspension made against Brown, pending the trial of the action.

It is claimed that this is an interlocutory order, made to operate only during the pendency of the action, and made in the exercise of the inherent power of the district conrt, and from which no appeal will lie.

It is true that the power to suspend or disbar an attorney from practice is inherent in all courts. (*Peyton's Appeal*, 12 Kan., 398; *Ex parte Robinson*, 19 Wall., 505; *In re Goodrich*, 79 Ill., 148; *Beene vs. State*, 22 Ark., 157.)

But this does not determine the question against the right of appeal from the order of suspension. Most of the judgments which a court renders are rendered in the exercise of some inherent power of the court, and the question as to whether an appeal lies

from such judgment must be determined from other considerations.

In the case of *Burke vs. Territory*, 37 Pac., 829, we held that the power to punish for contempt is inherent in all courts of record, and that an appeal lies to the supreme court from a judgment of contempt.

Section 330, of the statutes of Oklahoma of 1893, provides:

"In case of suspension or removal being ordered by a district court, an appeal therefrom lies to the supreme court, and all the original papers, together with a transcript of the record; shall thereupon be transferred to the supreme court, to be considered and finally acted upon. A judgment of acquittal by the district court is final."

An appeal is a matter of statutory regulation, and the legislature here has provided for an appeal to the supreme court from all judgments of suspension or disbarment. There is no limit on the right of appeal, and no classification here of different kinds of suspensions that might, by the court, be ordered. It is a broad and comprehensive right of appeal "in case of suspension," and includes any and all suspensions of attorneys that might be made.

In the case of *Winkelman vs. The People*, 50 Ill., 449, it is held that an appeal lies from an order of the circuit court, suspending an attorney from practice, although in that case no statute is cited granting the appeal.

In the case of *Walls vs. Palmer*, 64 Ind., 493, it was also held that an appeal lies from the judgment of the circuit court suspending an attorney from practice.

It is true that, in both of these cases cited, the judgment of suspension was a final judgment in the proceeding, and the judgments were not made as temporary orders, as in this case, but we do not see that this would change the rule. The right of appeal in a

case like this would not depend on the length of time which the judgment of suspension might be made operative. The right of review is granted from the judgment of suspension, no matter how temporary or how permanent it may be.

Appeals from these temporary orders do not exist in the absence of statutory regulations therefor.

Our Organic Act provides that an appeal shall be allowed from the district to the supreme court from all final judgments. The legislature may not take away the right of appeal in such cases, nor does this grant of right of appeal take away the right of the legislature to grant appeals from other orders or determinations not final in their nature. Under our code of civil procedure, an appeal lies from the order of the district court, granting or refusing an application for a temporary injunction, and under this provision appeal has been allowed from an order overruling an application for a temporary injunction. (*Bertenshaw vs. Hargrove*, 33 Kan., 668; *Akin vs. Davis*, 14 Kan., 143.)

This provision of the statute, allowing an appeal from an order of suspension in a disbarment proceeding, is of a kindred nature to that allowing an appeal from an order relating to a temporary injunction. The purpose of such provisions is remedial. It is to provide a review of orders which although not final do affect substantial rights, and such provisions should be liberally construed to affect the legislative intent. An appeal lies in this case.

The first assignment of error made by the appellant, is to the action of the court in overruling his motion to set aside the notice given him to appear and answer the information filed aganst him.

He contends that this is a civil proceeding, and is governed by the provisions of the code of civil procedure with reference to summons in the matter of

time allowed to answer, and as the answer day in a civil proceding ordinarily must be twenty days after the return day of the summons, that he should not be required to answer the information in less than twenty days after the service of notice.

That this is a civil proceeding is no doubt correct, although there are authorities to the contrary.

In the case of *Ex parte Wall,* 107 U. S. 265, the supreme court, in speaking of this question, said:

"The proceeding is in its nature civil, and collateral to any criminal prosecution by indictment. The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them."

In the case of *The People, ex rel. Shufeldt, vs. Barker,* 56 Ill. 299, the supreme court of that state, with reference to such a proceeding, said:

"The respondent, in express terms, denies the charge exhibited against him, and to overcome this express denial there ought to be required more than a mere preponderance of evidence. A charge so grave in its character, and so fatal in its consequences, ought, certainly, to be proved by what the law denominates a clear preponderance of the evidence."

Those courts recognize in this rule, as we believe, that the proceeding is a civil one and not a criminal one.

By statute in Indiana and Pennsylvania this class of proceeding is denominated a civil proceeding.

But, from the fact that the proceeding is a civil and not a criminal one in its nature, it does not follow that it is in all respects governed by the code of civil procedure. An action in *mandamus* is a civil proceeding, but the defendant may be required to answer or show cause why the order should not run against him in much less than the twenty days usually allowed for him to put in his defense. The statute provides a different

procedure in that class of cases.   So, too, in this, the statute has provided a different rule.

Section 325, of the statutes of 1893, provides, that :

"Any court of record may revoke or suspend the license of an attorney or counselor at law to practice therein, but not until a copy of the charges against him shall have been delivered to him by the clerk of the court in which the proceedings shall have been made, and an opportunity shall have been given to him to be heard in his defense."

Was it contemplated by this that twenty days time must be given to answer?   We think not, but simply that a copy of the charges shall be given to the person sought to be suspended or disbarred, and a reasonable opportunity, under the circumstances of the charges and of the surroundings, given him to answer or otherwise plead to the same.

"Opportunity" means, "fit or convenient time; a time or place favorable for executing a purpose; a suitable occasion." (Webster.)    This language is opposed to the idea that a fixed and arbitrary time must be given in each case which might arise.    It might, on the one hand, be a serious injury to the learned and honorable profession of the law that an attorney should be allowed, under very serious charges, to remain and practice his profession.   It would, on the other hand, be a detriment to an innocent attorney, improperly charged, to remain for a fixed period without an opportunity to speedily vindicate himself of the same.   The law has, therefore, wisely provided a different rule for bringing this class of cases to an issue than that which governs in ordinary civil proceedings.    The universal rule, so far as we are advised by any authorities, is that a party must be given a reasonable opportunity to be heard; and our statute in this respect merely declares the law as it has long existed.   (Weeks on Attorneys at Law, 143;

*Ex parte Robinson,* 19 Wall. 505; *Beene vs. State,* 22 Ark. 157.)

We cannot say abstractly that three days was not a reasonable opportunity for the plaintiff in error to prepare his defense. If this time was, as a matter of fact, not sufficient to prepare his defense, this could be made known to the court by a proper application, and it would then have been within the discretion of the court to allow further time.

The second assignment is that the court erred in overruling the application of the defendant in the court below for a change of venue on account of the bias and prejudice of the judge of the district court against the defendant.

The application was quite lengthy and of unusual detail, and was sufficient, unless the objection urged to it is held good.

It is claimed by both sides that the court overruled the application because, under the condition of the law of this territory, the application should have been for a change of judge and not for a change of venue from the county.

A part of § 10 of the Organic Act provides:

"And all civil actions shall be instituted in the county in which the defendant, or either of them, resides or may be found; and when such actions arise within any portion of said territory, not organized as a county, such actions shall be instituted in the county to which such territory is attached for judicial purposes; but any case, civil or criminal, may be removed, by change of venue, to another county."

As regulating the procedure in such cases, the legislature by general § 3930, § 56 of art. 5, ch. 66, of the code of civil procedure of 1893, provides as follows:

"In all cases in which it shall be made to appear to the court that a fair and impartial trial cannot be had in the county where the suit is pending, or when the

judge is interested or has been of counsel in the case or subject matter thereof, or is related to either.of the parties, or is otherwise disqualified to sit, the court may, on application of either party, change the place of trial to some county where such objection does not exist."

After this statute of the legislature was passed, and on December 21, 1893, by the latter part of § 3, ch. 5, of the act of congress of that date, it was by congress provided:

"The supreme court of said territory (referring to Oklahoma), or the chief justice thereof, may designate any judge to try a particular case or cases in any district, when the judge of said district has been of counsel, or is of kin to either party to the action, or interested, or is biased or prejudiced in the cause, or if for any other reason said judge is unable to hold court."

Did congress by this last provision take away the right of a change of venue from the county on account of the bias and prejudice of the presiding judge as is granted by § 3930 of the Oklahoma statute? We think not. There is no conflict whatever between the two statutes. They can both stand, and one is not in conflict with or opposed to the other. The territorial legislative enactment proxides for the taking of a change of venue from the county on application of either party in pursuance to the grant of right in the Organic Act; the congressional enactment provides for the designation of a judge of another district to try the cause in the district where it arose. Without this congressional enactment a judge of the district court could not be assigned to try a case in a district other than his own. (*Stanley vs. United States*, 1 Ok. 336.)

And this act of congress was passed, evidently, to overcome such a difficulty in our judicial system, and was not intended to interfere with a provision properly

made by enactment of the legislature for a change of venue.

The right to a change of venue granted by this § 3930 of our code is a right belonging to either party to the action, is absolute and clear, and is not superseded by any other statutory provision.

The word "may" as used in this section means "must," it is a grant of right where the conditions are such as to make the law applicable. (*Kan. Pac. R. R. Co. vs. Reynolds,* 8 Kan. 623.)

*In re Payton's Appeal,* 12 Kan., 398, the words "or otherwise disqualified to sit" were construed to give a party the right of change of venue where the judge was biased or prejudiced against the party applying.

Nor does this provision leave any option with the district court to grant a change of venue or to grant a change of judge under the provision of the United States statute.

In Kansas, in addition to a provision of law, from which our § 3930, above quoted, is taken, there is a provision for the election of a judge *pro tem.* when the regular judge is interested or has been of counsel.

In the case of the *Kansas Pacific Railway Company vs. Reynolds, supra.,* it was held that this provision did not take away the right of a party to have a change of venue from the county if he so desired. The learned judge, Brewer, speaking in the case for the court, said :

"Second. It is urged that § 4 of ch. 28, general statutes, provides for the election of a judge *pro tem.* when the regular judge is interested or has been of counsel; that this section has not been repealed, and that, though the law of 1870 be a subsequent enactment, yet a fair construction, seeking to harmonize both, and to give effect to each, would leave it discretionary with the judge whether to change the place of trial, or order the election of a judge *pro tem.* The two sections are materially different, and provide for

distinct contingencies.   The law of 1870 operates only
upon the application of one of the parties.   The pro-
visions of the general statute are vitalized by the
mere disqualification of the judge.   When a case is for
trial, if the judge has been of counsel and neither
party moves in the matter, he orders the election of a
judge *pro tem.* under § 4 of ch. 28, above cited.   If,
however, either party desires, he may apply under the
law of 1870, and by that is entitled to a change of the
place of trial.   The two acts harmonized do not vest
a discretion in the judge, but grant a right to the par-
ties.   It is not left with him, but with them, to decide
whether to proceed under a judge *pro tem.*, or to take
a transfer.   The law of 1870 thus adds a condition
which is not in the general statutes.   It is not harmo-
nizing, it is legislating, to ignore this condition, and
then leave to an officer the choice as to which statute
he will act under, especially when such choice might
materially affect the rights of a party.   Third:   It is
claimed that § 20 of art. 3 of the constitution affects
this question.   That section reads:

" 'Sec. 20.   Provision shall be made by law for the
selection, by the bar, of a *pro tem.* judge of the dis-
trict court, when the judge is absent or otherwise un-
able or disqualified to sit in any case.'

"In pursuance of this constitutional provision, § 4,
of ch. 28, of the general statutes heretofore cited, was
enacted.   It authorizes the election of a *pro tem.* judge
under the circumstances named.   Now this consti-
tutional provision can affect this question only for
one of two reasons—either because it restricts the
power of the legislature to dispose of a cause pending
in a court whose judge is disqualified to try it, or
because in such a case it guarantees to a party liti-
gant a trial in the same court before a judge *pro tem.*
It is not in terms a denial of power.   It does not pur-
port to withhold or limit.   Nor it is couched in the
form of a grant.   The act required, is an act of legis-
lative power.   It would pass to the legislature under
the general grant.   Without it, unless restrained by
some other clause of the constitution, the legislature
could do just what it has done and what it is author-
ized to do under this section.   If, therefore, it neither
grants power otherwise reserved, nor restricts power

otherwise granted, why was it incorporated into the constitution, and what function does it perform? It is directory in its nature. It calls the attention of the legislature to a particular subject, and imposes a duty in that respect. It emphasizes the will of the people in reference to certain legislation; and being such, we know of no reason for construing an imposition of duty as a restriction of power. It may be also that without this provision, the section of the constitution requiring district judges to be elected by the people would prevent the election of a judge *pro tem.* by the bar. It is not self-operative. It gives no rights to litigants except through legislative action. Until such action there would be no warrant for the election of a judge *pro tem.*; and the repeal of the law would take away any authority for such an election. How then can it guarantee to a suitor the right to a trial before a judge *pro tem.*? These considerations have led us to the conclusion that the district judge erred in refusing to change the place of trial. We see the hardship which may result in some cases, and think the rule ought to be as the district judge held it to be, that the court should have a discretion whether to change the place of trial or order the election of a judge *pro tem.* But we must take the law as we find it. We must ascertain and declare the legislative will, as recorded; and if the rule that body has established be a harsh one, it alone has the power to alter it."

We have quoted thus extensively from the opinion cited because of its clearness and comprehensiveness and because of the high authoriy from whence it emanates, and because it covers and fully disposes of the entire question here presented. It settles the question without further discussion that in the case at bar the plaintiff in error having presented a sufficient application for a change of venue, he should not be denied the same because there were other regulations whereby a change of judge could be had without change of venue. The court erred in its holding on this question, and for this the judgment of the court below must be reversed. There are numerous other questions raised

by the petition in error which it is not now necessary for us to examine.

The judgment of the court below is reversed, with costs of this proceeding against William A. Wallace, who filed the information, and with directions to proceed in accordance with these views.

Scott, J., having presided below, not sitting; all the other Justices concurring.