## STATE BAR COMMISSION *ex rel.* WILLIAMS v. SULLIVAN.

No. 3506. Opinion Filed July 23, 1912.

On Application for Rehearing, November 22, 1912.

Publication Withheld Until March 31, 1913.

(131 Pac. 703.)

1. **ATTORNEY AND CLIENT—Disbarment—Verification of Charges.** In disbarment proceedings instituted by the State Bar Commission by the order and direction of the Supreme Court, no verification of the specification of charges is necessary, under section 267, Comp. Laws 1909.

2. **SAME—Determination of Sufficiency.** The sufficiency of the verification must be determined by an inspection of it, and the evidence of affiant cannot be taken for the purpose of showing that he had no personal knowledge as to the charges.

3. **CONSTITUTIONAL LAW—Jury—Right to Practice Law—Vested Right—Jury Trial.** The right to practice law is not a vested right, but a mere privilege, and an action to disbar an attorney under section 267, Comp. Laws 1909, is a civil proceeding, and the accused is not entitled to a trial by a jury as a matter of right.

4. **ATTORNEY AND CLIENT—Disbarment — Grounds — Attack on Court.** The obligation which attorneys assume when they are ad-

mitted to the bar is not simply to be obedient to the Constitution and laws, but to maintain at all times the respect due the courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but includes abstaining, out of court, from insulting language and offensive conduct toward the judges personally for their judicial acts. An attorney may criticise the courts so long as his criticisms are made in good faith and in respectful language, but the printing and publication of a pamphlet falsely, purposely, and maliciously attacking the integrity of the courts and the judges thereof, designed to willfully, purposely and maliciously misrepresent the courts and the judges thereof and bring them into disrepute and lessen the respect due them, violates his duties and obligations as an attorney and counselor at law, for which he may be disbarred.

5. **SAME—Pleading as Evidence.** Under section 266, Comp. Laws 1909, an attorney cannot be suspended or disbarred for the filing of any pleading or exhibit in the courts of this state, but a petition, with a pamphlet attached thereto as an exhibit, falsely and maliciously attacking the courts of this state and the judges thereof, may be considered as evidence upon the question of the attorney's moral and mental fitness to practice law.

6. **SAME—Jurisdiction.** The Supreme Court, having exclusive jurisdiction to admit attorneys to practice law, has, independent of statutory authority, the inherent power to disbar attorneys for misconduct.

(Syllabus by the Court.)

Burford and Hubbell, Special Judges, dissenting.

Original proceeding by the Bar Commission of the State of Oklahoma, on the relation of Ben F. Williams, for the disbarment of P. M. Sullivan. Defendant disbarred, and application for rehearing overruled.

*C. W. Stringer,* for plaintiff.

*James Twyford,* for defendant.

DUDLEY, Special Judge. This is an original proceeding in this court by the State Bar Commission, on the relation of Ben F. Williams, against P. M. Sullivan, a member of the bar of this court and the inferior courts of the state, residing at Oklahoma City. The regular judges of the Supreme Court were disqualified, and this fact was certified by them to the Governor of the state, who thereupon appointed five special justices of the Supreme Court to hear and determine this cause, who there-

after assembled at Oklahoma City and qualified as such, and heard the testimony in this case. Before proceeding to a discussion of the merits of the case, it becomes necessary to determine some preliminary questions raised and urged by counsel for defendant.

The ·specification of charges was filed January 13, 1912. The defendant was duly notified of the filing of the charges and furnished with a copy thereof, and in due course of time filed an answer to and an explanation of the charges and specification filed against him, to which the plaintiff filed a reply, by way of general denial. Upon the hearing of the cause, the defendant objected to the introduction of any evidence upon the part of the plaintiff in support of the specification of charges, for the reason that the petition or specification of charges was not verified, as required by law, in that it was verified upon information and belief and not positively; and thereupon C. W. Stringer, the attorney for the plaintiff and the person who verified the specification of charges upon information and belief, asked leave of court to amend the verification of charges by making the verification positive. Leave was granted to do so and the amendment was made, and after the conclusion of the taking of testimony upon the part of the plaintiff the defendant again challenged the sufficiency of the verification of the specification of charges, for the reason that the testimony clearly showed that Mr. Stringer had no personal knowledge of the allegations contained in the specification of charges, and that by reason thereof the court did not have jurisdiction. The position of counsel for defendant is not well taken, for two reasons: (1) This proceeding was commenced by the Bar Commission of the State of Oklahoma, by the order and direction of this court, and therefore, under section 267, p. 229, Comp. Laws 1909, it was not necessary for the specification of charges to be verified at all; and (2), even though it were necessary for the specification of charges to be verified, after the amendment was made as to the verification, it was then a positive verification and its sufficiency must be determined by an inspection of the verification itself; and, even though it developed upon the hearing of the case (a point which

we do not concede) that the person who made the verification did not have actual knowledge of the statements contained therein, this fact cannot be taken for the purpose of showing that he had no personal knowledge. *In re Collins,* 147 Cal. 8, 81 Pac. 221.

It was also contended by the defendant that his right to practice law in the courts of this state was a vested right, and that therefore as a matter of right he was entitled to a trial by a jury in this court, upon the charges preferred against him, under chapter 56, p. 97, of the Session Laws of 1910, providing for trial by jury in this court. To this contention of the defendant we cannot agree. The right to practice law is not a vested right, but a mere privilege. 4 Cyc. p. 898, and cases cited; *State ex rel. Mackintosh, Pros. Atty., v. Rossman,* 53 Wash. 1, 101 Pac. 357, 21 L. R. A. (N. S.) 821, 17 Ann. Cas. 625. Section 268, p. 229, Comp. Laws 1909, on the subject of "Trial in Disbarment Proceedings," specifically provides that the issues joined shall in all cases be tried by the court. This is a specific statute covering this class of proceedings, and should govern over the general statute. Section 1, c. 56, p. 97, of the Session Laws of 1910, provides:

"That in any cause now pending or hereafter brought in the Supreme Court wherein said court is exercising its original jurisdiction in which an issue of fact is presented properly triable by a jury, and either party to said cause demands a jury trial, said court shall not dismiss such cause for the reason that a jury is required, but shall proceed in the manner hereinafter prescribed."

The issue of fact presented here is not properly triable by a jury, for the reason that the special statute governing the trial of proceedings of this kind specifically provides that all questions of fact shall be tried by the court. The provision of the Constitution as to the right of a trial by a jury means the right of trial by jury as it existed at the time of the adoption of the Constitution. Williams' Ann. Const., sec. 27, p. 15; *State v. Cobb,* 24 Okla. 662, 104 Pac. 361, 24 L. R. A. (N. S.) 639; *Baker v. Newton,* 27 Okla. 438, 113 Pac. 1034. A disbarment proceeding, under our statute, is a civil proceeding (*In re Biggers,* 24 Okla. 842, 104 Pac. 1083), and the right to a trial by a jury in a disbarment proceeding did not exist at the time of the adoption of

the Constitution (*Dean v. Stone*, 2 Okla. 13, 35 Pac. 578). We therefore are clearly of the opinion that the defendant was not as a matter of law entitled to a trial by jury, and his application was denied.

This disposes of all preliminary questions raised and urged by the defendant, and we now proceed to a discussion of the merits of the case.

It is alleged in substance in paragraph 2 of the specification of charges that the defendant is not a fit and proper person to engage in the practice of law in this state and should be disbarred, for the reason that he has been guilty of gross misconduct and has violated his oath and duty as an attorney and counselor at law. This paragraph is subdivided into five specific charges. However, we only deem it necessary to consider two of them, namely, the second and fifth, and we will therefore discuss them in their order. In the second subdivision of this general charge it is alleged that the defendant has been guilty of gross misconduct and violated his duty and obligations as an attorney and counselor at law, in that he, within a year prior to the filing of the specification of . charges in this court, falsely, maliciously, and without reasonable justification or excuse caused to be printed and published a certain book or pamphlet entitled "A Criminal Combine," consisting of the Governor, the Attorney General, the Supreme Court, district courts, district clerks, district attorneys, referees, perjurers, murder plotters, and crooks galore in the state of Oklahoma; that said book or pamphlet was printed and published by the defendant for the purpose of giving vent and expression to his own personal spleen and malice, and to excite and create an ill will and prejudice against the courts of this state and the judges thereof, and the other officers and attorneys mentioned in said publication.

The defendant in his answer admitted the printing and publication of the pamphlet, but claims that the publication was in good faith and without malicious motives, and that the statements and allegations therein contained are true; he denies, however, that the pamphlet was printed and published at any time within one year prior to the filing of the specification of charges herein, and claims

that, if he did violate any of his duties and obligations as an attorney and counselor at law, he cannot be disbarred on account thereof, for the reason that the same is barred by the statute of limitations.

In the fifth subdivision of the specification of charges it is alleged that the defendant has been guilty of misconduct and violated his duties and obligations as an attorney and counselor at law by preparing and filing in the district court of Oklahoma county, Okla., a certain document styled a "Petition," in case No. 11,054, wherein he is plaintiff and the Watch Tower Bible Tract Society and others, including the district, superior, and county judges of Oklahoma county, the district judge of Cleveland county, the judges of the Supreme Court, C. N. Haskell, Governor, and Chas. West, Attorney General, are defendants, in which he charges these defendants and others mentioned therein with a conspiracy to judicially rob him of certain real estate in Oklahoma City, and in connection with this general charge of conspiracy he charges them with robbery, bribery, perjury, and numerous other offenses; that the preparation and filing of said pleading was not actuated by an honest purpose to present and state in said petition any issuable or triable matters of fact or law, but was prepared and filed maliciously and for the purpose upon his part to slander and libel said defendants and bring the courts of this state, and the judges thereof, and the other officers mentioned therein, into contempt, ridicule, hatred, and malice, and to injure the defendants in their reputations as citizens and public officials. Defendant in his answer admits that he prepared and filed said petition, but claims that the statements and allegations therein contained are true; that he filed the action for the purpose of recovering the lands which he had lost by reason of the acts and conduct of the defendants, as therein stated; and that the filing of said petition was no misconduct upon his part, nor a violation of any of his duties and obligations as an attorney and counselor at law, and, even if it were, he cannot be suspended or disbarred on account thereof under the statutes of this state.

We think the statements and allegations of the second and fifth subdivisions of paragraph 2 of the specification of charges

are sustained by the testimony, and it therefore becomes pertinent to determine whether or not the conduct upon the part of the defendant, as set out in these two subdivisions, justifies his suspension or disbarment under the statutes of this state. Section 266, p. 228, Comp. Laws 1909, enumerates three causes for which an attorney may be suspended or disbarred. The one applicable, if at all, to the facts in this case, is subdivision 3, which is, "For the willful violation of any of the duties of an attorney or counselor." Section 257, p. 227, Comp. Laws 1909, defines the duties of attorneys. The part of the statute applicable to the case at bar is: "Not to encourage either the commencement or continuance of an action or proceeding upon any motive of passion or interest." Section 255, p. 226, Comp. Laws 1909, prescribes the oath that attorneys and counselors at law of this state shall take in open court. The part of the oath applicable to this case is:

"You shall not wittingly, willingly or knowingly promote, sue or procure to be sued, any false or unlawful suit, or give aid or consent to the same; you shall delay no man for lucre or malice, but shall act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client."

These are all of the sections of our statute that in any way apply to the facts and circumstances of this case; and, if the conduct of the defendant does not come within these provisions, then there is no statutory authority for his suspension or disbarment upon the charges brought against him.

The pamphlet or book referred to is a 36-page document, with defendant's picture on the front page. A mere casual reading of this pamphlet by one familiar with the judicial history of this state will convince him that it is a false, malicious, and unwarranted attack upon the courts and the judges thereof mentioned and referred to in the publication. It bristles with malice and hatred from start to finish, and was published for the purpose of creating an ill will and prejudice against the Supreme Court, the inferior courts, and the judges thereof mentioned therein. The pamphlet gives a detailed history of the proceedings instituted by defendant in the district court of Oklahoma county to recover a certain piece of valuable real estate located in Ok-

lahoma City. The case, or some phase of it, has been before three or four district judges and as many special judges and referees, the superior and county judges of Oklahoma county, and the regular district judge and special judge, W. J. Jackson, of the district court of Cleveland county, and finally reached the Supreme Court, where the judgment of the district court of Cleveland county, was reversed and a new trial granted. The publication charges every judge, special or regular, and the referees to whom said cause, or some phase thereof, has been referred, with a conspiracy to judicially rob the defendant of the piece of land in Oklahoma City, and in furtherance of this general conspiracy he charges them with bribery, perjury, and other crimes and misdemeanors too numerous to mention. Finally, after the case got into the Supreme Court, even though he secured a reversal, he takes exception to the action of the Supreme Court because they did not render a judgment in his favor on the merits of the case, and then proceeds to accuse them with bribery, forgery, perjury, and other serious charges. The publication, upon its face, is conclusive of the falseness and maliciousness of the statements therein contained. It would take too much space to refer to the various charges contained in this pamphlet, but the following paragraph from what is styled the "Introductory" in the publication is a fair index to the contents thereof:

"And I know from a bitter, boycotted, persecuted experience that not only the Supreme Court, but the Governor (C. N. Haskell), the Attorney General, four district judges, two district clerks, three county attorneys, and other county and state officials of Oklahoma, are impure and guilty of many high crimes and misdemeanors in office for which they can and should be driven from power to prison."

Upon the trial of the case the defendant offered no apology for the publication of the document, but asserted that the statements therein contained were true. This assertion, however, was made in his pleadings, and not under oath in open court, because he did not see proper to testify in his own behalf upon the hearing. An attorney has a right to criticise the courts of this state, so long as his criticisms are made in good faith and in respectful language, and with no design to willfully or maliciously mis-

represent the position of the courts, or tend to bring them into disrepute or lessen the respect due them. Is this publication a criticism? Certainly not. It is a willful, malicious, outrageous, and unwarranted attack upon the integrity of the courts of this state and the judges thereof, with the sole and only purpose of creating a feeling of ill will and prejudice against the courts of this state and lessening the respect due them. Freedom of speech is one of our boasted guaranties of liberty; but even this right should be curbed when the integrity of the courts are willfully and maliciously assailed. The court has the inherent right to protect itself from such malicious attacks, and we think the publication of this pamphlet by the defendant a willful violation of his duties as an attorney and counselor at law, in that it violates that part of his oath as an attorney which provides that he shall act in the office of an attorney according to his best learning and discretion, with all good fidelity as well to the court as to his client.

Our statute undertakes to limit the grounds upon which an attorney may be suspended or disbarred, and one of these grounds is the willful violation of any of the duties of an attorney or counselor. The statute also in a general way defines the duties of an attorney, but it in no sense attempts to define and set out all of the duties of an attorney. An attorney is an officer of the court, and as such it is his duty not merely to observe the rule of courteous demeanor in open court, but also to abstain, out of court, from all insulting language and offensive conduct toward the judges personally for their judicial acts. 4 Cyc. 908. The oath which an attorney is required to take before being permitted to practice law in the courts of this state is not simply to be obedient to the Constitution and laws of the state, but to maintain at all times the respect due the courts of justice and judicial officers (*Bradley v. Fisher,* 80 U. S. [13 Wall.] 335, 20 L. Ed. 646; *In re Breen,* 30 Nev. 164, 93 Pac. 997), and for a violation of these duties an attorney may be suspended or disbarred. The defendant in this cause has not shown the proper respect due the courts of this state and the judges thereof.

In the petition above referred to, which the defendant prepared and filed in the district court of Oklahoma county, he reiterates, to a very large extent, the contents of the pamphlet or book, and in fact attaches the pamphlet to the petition as an exhibit and makes it a part thereof, and asks judgment against the defendants, including the district, superior, and county judges of Oklahoma county, and the district judge of Cleveland county,. and the members of the Supreme Court and others, for $250,000. It is insisted by counsel for defendant that he cannot be suspended or disbarred for filing a pleading in court under our statutes. This contention, we think, is correct, but we think the petition and the exhibit are competent evidence to be considered along with other evidence in the case, as affecting the defendant's mental and moral fitness to continue to practice law before the courts of this state. He certainly did not expect to recover a judgment against the judges of the Supreme Court and the inferior courts of the state. He evidently sought this means to harass and attack the courts of this state and the judges thereof with the hope that he might create a feeling of ill will and prejudice against them, and we think the pleading, with the exhibit attached thereto, are competent evidence upon the general charge of misconduct and moral fitness in the specification of charges.

The Supreme Court of this state has exclusive power to admit attorneys to practice law before it and in the inferior courts independent and aside from the statutory grounds of disbarment, the inherent power to suspend or disbar attorneys. *In re Ex parte Wall,* 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552; *Bradley v. Fisher,* 13 Wall. 335, 20 L. Ed. 646; 4 Cyc. 905; *In re Newby,* 76 Neb. 482, 107 N. W. 850; *In re Robinson,* 48 Wash. 153, 92 Pac. 929, 15 L. R. A. (N. S.) 525, 15 Ann. Cas. 415; *In re Wilson,* 79 Kan. 450, 100 Pac. 75; *In re Durant,* 80 Conn. 140, 67 Atl. 497, 10 Ann. Cas. 539; *In re Breen,* 30 Nev. 164, 93 Pac. 997; *In re Ebbs,* 150 N. C. 44, 63 S. E. 190, 19 L. R. A. (N. S.) 892, 17 Ann. Cas. 592; *In re Thatcher,* 80 Ohio St. 492, 89 N. E. 39; *In re Egan,* 22 S. D. 355, 117 N. W. 874; *Danforth v. Egan,* 23 S. D. 43, 119 N. W. 1021, 139 Am. St. Rep. 1030, 20 Ann. Cas. 418; *Underwood v. Commonwealth*

(Ky.) 105 S. W. 151; *In re Simpson*, 9 N. D. 379, 83 N. W. 541; *State ex rel. Atty. 'Gen. v. Burr*, 19 Neb. 593, 28 N. W. 261; *State v. Mosher*, 128 Iowa, 82, 103 N. W. 105, 5 Ann. Cas. 984.

After a thorough consideration of all the testimony in this case, we are of the opinion that his conduct is such that he is not a fit and proper person to practice law in the courts of this state, and that his license should be revoked.

It is therefore ordered, adjudged, and decreed by the court that the license of the defendant to practice law before this court and the inferior courts of this state be and the same hereby is revoked, and that the costs in this case be taxed against the plaintiff.

JOHNSON and ZEVELY, Special Judges, concur; BURFORD and HUBBELL, Special Judges, dissent.

BURFORD, SPECIAL JUDGE (dissenting). I regret that I am unable to concur in the judgment pronounced by the majority of the court. In my judgment the defendant Sullivan is not a fit or proper person to engage in the practice of law in the state of Oklahoma, but I cannot come to the conclusion that under the laws in force in this state there is authority for disbarment.

The charges against defendant, when reduced to their ultimate conclusion, charge him with being mentally and morally unfit to engage in the practice of law. This charge is based upon the publication of two certain pamphlets reflecting in the most bitter and malicious way upon the various courts of this state. Sufficient substance of these pamphlets is set out in the majority opinion of the court. Assuming with the court that the publication of these pamphlets within the period of limitation and their falsity have been properly established, I yet cannot conclude that they constitute proper grounds for disbarment. Section 266 of Snyder's Statutes (Comp. Laws 1909), provides in part:

"The following are sufficient causes for suspension or revocation.: First, when he has been convicted of a felony under the laws of Oklahoma, or a misdemeanor involving moral turpitude, in either of which cases the record of conviction is conclusive evidence. Second, when he is guilty of a willful disobedience or violation of any order of the court requiring him. to. do or forbear any act connected with or in the line of his profession.

Third, for the willful violation of any of the duties of an attorney or counselor: Provided, that whenever any act is done by the attorney for an honest purpose or with the intent to discover the truth in some matter heretofore being litigated and pending in any tribunal at the time the acts were done, or to prevent litigation, then they shall not be grounds for revocation or suspension of the attorney's license. The filing of any pleading or exhibit in court shall not be cause for suspension or revocation of the attorney's license, but may be punished as a contempt and according to the laws governing proceedings in contempt cases. *An attorney's license shall not be revoked or suspended for any cause or in any manner except as provided in this chapter of the statutes of this state as amended by this act.*"

It is not charged that the defendant has been convicted of a felony or a misdemeanor involving moral turpitude. It is not charged that he has been guilty of any willful disobedience or violation of any order of court. The charges, therefore, cannot be brought under the first or second subdivision of the statute. Has he been guilty under the third subdivision, to wit, of any willful violation of the duties of an attorney or counselor? These duties are specifically set out in section 257 of Snyder's Statutes (Comp. Laws 1909), as follows:·

"(1) It is the duty of an attorney and counselor *while in the presence of the courts of justice* or in the presence of judicial officers engaged in the discharge of judicial duties, to maintain the respect due to the said courts and judicial officers, and at all times to obey all lawful orders and writs of the court. (2) To counsel and maintain no actions, proceedings or defenses, except those which appear to him legal and just, except the defense of a person charged with a public offense. (3) To employ for the purpose of maintaining the causes confided to him such means only as are consistent with truth and never to seek to mislead the judges by any artifice or false statements of facts or law. (4) To maintain inviolate the confidence, and, at any peril to himself, to preserve the secrets of his client. (5) To abstain from all offensive personalities, and to advance no fact prejudicial to the honor or reputation of a party or witness unless required by the justice of the cause with which he is charged. (6) Not to encourage either the commencement or continuance of an action or proceeding from any motive of passion or interest. (7) Never to reject for any consideration personal to himself the cause of the defenseless or the oppressed."

I cannot conceive that the publication of a pamphlet outside of court which makes unwarranted reflections upon the courts and the officers thereof can be construed to come under any of the seven subdivisions of the duties of an attorney as specified in the statute. The defendant has perhaps failed to maintain the respect due to courts and judicial officers, but this failure was not charged or proven to be in the presence of any court, and the statute specifically limits the application of such language to conduct in the presence of judicial officers. The majority of the court seem to place the alleged misconduct of the defendant under .the subdivision "not to encourage either the commencement or continuance of an action or proceeding upon any motive of passion or interest." I cannot agree that the publication and circulation of this pamphlet encouraged the commencement or continuance of any action or proceeding. It is charged that such pamphlet was filed in the district court of Oklahoma county, attached. as an exhibit to a pleading. Section 266 expressly provides that the filing of a pleading or exhibit shall not be cause for suspension or revocation of an attorney's license, and I cannot conclude that the publication and circulation of this pamphlet outside of court would in any way have affected the commencement or continuance of any action or proceeding whatsoever.

I am forced to the conclusion, therefore, that the defendant's conduct does not constitute a violation of any of the duties of an attorney as prescribed by our statutes, and that, therefore, neither of the three statutory causes of disbarment has been proven against him. Nor can I agree with the court that the inherent power exists in the Supreme Court to disbar an attorney for other than the grounds laid down in the statute. Undoubtedly, at common law, inherent power existed in courts of record to suspend or disbar the attorneys practicing before such court when the power of admission was vested in the court exercising the power of disbarment. Undoubtedly, at common law, the publication of a false and malicious pamphlet reflecting upon the courts, as does the one in the case at bar, would constitute proper grounds for disbarment. Perhaps the weight of authority is to the effect that, where statutes have been passed merely declaring what

shall be grounds for disbarment without any prohibition therein contained, the courts may continue to exercise the inherent power of disbarment for causes other than those named in the statute, upon the principle and assumption that the grounds named by the statute are not intended to be exclusive. But our statute specifically provides that:

"An attorney's license shall not be revoked or suspended for any cause or in any manner except as provided in this chapter of the statutes of this state as amended by this act."

I have been unable to find a single adjudicated case that goes so far as to hold that such a statute may be swept aside and declared invalid and the court proceed to exercise the power of disbarment which formerly inhered in it. A few cases touching upon this subject will be noted.

In the case of *In re Lambuth,* 18 Wash. 478, 51 Pac. 1071, cited in the case of *In re Robinson,* 48 Wash. 153, 92 Pac. 929, 15 L. R. A. (N. S.) 525, 15 Ann. Cas. 415, the court, speaking of the power of disbarment, says:

"But power to strike from the rolls is inherent in the court itself. No statute or rule is necessary to authorize the punishment in proper cases. *Statutes and rules may regulate the power,* but they do not create it."

If the statute may regulate the power of this court, then it is apparent that the Legislature has, in as strong language as could be used, limited the power to disbar to the causes named in the statute.

In *Re Peyton,* 12 Kan. 404, Judge Valentine says that the power to disbar "is a necessary incident to the proper administration of justice; that it may be exercised without any special statutory authority, and in all proper cases, *unless positively prohibited by statute."* Here the judge, even while asserting the inherent power of the court, recognizes the power of the Legislature to prohibit the exercise of it.

In *Re Smith,* 73 Kan. 743, 85 Pac. 584, the Supreme Court of Kansas, in declaring that a court may punish for causes other than those enumerated in the statute, shows the reason of the rule:

"As will be observed, the statute does not provide *that the only causes* for which the license of an attorney may be revoked

or suspended are those specified in the statute, nor does it undertake to limit the common-law power of the courts to protect itself and the public by excluding those who are unfit to assist in the administration of the law. It merely provides that certain causes shall be deemed sufficient for the revocation or suspension of an attorney's license."

In this state the Legislature has prescribed the *only causes* for which a license may be revoked or suspended.

In *Re Mills,* 1 Mich. 392, where it is held that the statutory grounds are not exclusive, the court in discussing the statute, says:

"That the Legislature never intended to withhold from our courts the exercise of a power so necessary to preserve the administration of justice from pollution, and the public from imposition."

In this state, on the contrary, the Legislature has expressly said that it intended to withhold this power.

In *Delano's Case,* 58 N. H. 5, 42 Am. Rep. 555, the court says that the act of the Legislature was not intended to be exclusive.

In *State v. McClaugherty,* 33 W. Va. 250, 10 S. E. 407, the court holds that the statute there in force is applicable only to a proceeding for disbarment, whereas the proceeding being considered was one for suspension.

In *Bar Association v. Greenhood,* 168 Mass. 169, 46 N. E. 568, the court holds that, there being no prohibition in the statute, the grounds therein set up will not be held to be exclusive.

Similar adjudications may be found in *Sanborn v. Kimball,* 64 Me. 140; *Serfass' Case,* 116 Pa. 455, 9 Atl. 674; *State v. Gebhardt,* 87 Mo. App. 542, and others.

In no case which I have been able to examine has the court held, in the face of a prohibition such as is contained in our statute, that the inherent power of the court to disbar continued. On the other hand, in *Ex parte Yale,* 24 Cal. 243, 85 Am. Dec. 62, the court, speaking of attorneys and their duties, said:

"The manner, terms, and conditions of their admission to practice, and of their continuing in practice, as well as their powers, duties, and privileges, are proper subjects of legislative control to the same extent and subject to the same limitations as in the case of any other profession or business that is created or regulated by statute."

In *Re Collins,* 147 Cal. 13, 81 Pac. 222, the court said:

"Whatever the rule may be in the absence of statutory regulations as to the power of courts to deprive attorneys of their license for causes which, in the judgment of the court, may warrant that action, we are satisfied that, when the Legislature has specified the acts for which an attorney may be disbarred or suspended, the court is not authorized to act for other causes, or warranted in invoking an asserted implied power to amove for causes not specified in the statute; that the Legislature has the power to regulate the causes for which a disbarment or suspension of an attorney may be had; and that the courts are bound by this regulation and the limitation it imposes."

In *Re Eaton,* 4 N. D, 514, 62 N. W. 597, the court said:

"Where the statute enumerates grounds for disbarment of an attorney, no other ground can be considered by the court."

To the same effect is *Ex parte Schenck,* 65 N. C. 353; *State v. Byrkett,* 4 Ohio Dec. 89; *Ex parte Smith,* 28 Ind. 47; *Kane v. Haywood,* 66 N. C. 1; *Ex parte Trippe,* 66 Ind. 531.

Both under principle and authority I am unwilling to concede the power of this court to sweep aside the specific language of the Legislature acting upon a matter which I believe to be within its power. It is to be regretted that such a law is upon our statute books; but, finding it there, in my judgment the courts must leave the remedy to the people and the Legislature rather than to their own power. Even under the statute as it exists, the facts alleged in the petition for disbarment constitute a crime of which the defendant might regularly have been indicted and convicted, and such conviction would have operated as a conclusive ground for disbarment in this court.

I am therefore forced to dissent from the judgment of the court that the defendant be disbarred.

---

ON APPLICATION FOR REHEARING.

ZEVELY, SPECIAL CHIEF JUSTICE. The respondent was tried before this court, composed of five special justices, upon the charge of uttering a document defamatory of and grossly disrespectful to the five regular justices of this court. He was ad-

judged guilty and disbarred from practice, and he now files an application for rehearing based on thirteen several grounds, which will be discussed *seriatim*.

1 and 9. It is contended by respondent that his right to practice his profession as an attorney is property, and that under the due process of law provision of the Constitution he could not be deprived of such property without a jury trial. Conceding for the sake of argument, without deciding, that this professional capacity is property, a jury is not indispensable in a trial for disbarment. That he is not entitled to a jury has been expressly decided by the highest authority, which we are content to follow. *Ex parte Wall*. 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552, 562; *Davis v. State*, 92 Tenn. 643, 23 S. W. 62; *In re Goodrich*, 79 Ill. 148; *In re Shepard*, 109 Mich. 633, 67 N. W. 972. Nor are we aware of any authority in conflict with this view.

2 and 3. If the Bar Commission is not a legal entity, its relator Ben Williams must be deemed sole complainant. As he is a natural person capable of making the complaint, it is immaterial whether he or the Bar Commission is to be deemed the complainant. But this is not technically a suit by the complainant; the only purpose of requiring a complainant at all is to have a moral sponsor for the charges who shall be responsible for costs if cast therefor. Nor is it material whether the committee presenting the charges had authority to present them from any other person or body. *Fairfield v. Taylor*, 60 Conn. 14, 22 Atl. 442, 13 L. R. A. 769. In that case the court, by Andrews, C. J., said:

"It was the duty of the attorneys, if they knew of unprofessional conduct by the appellant or any other attorney, to bring it to the attention of the court. An appointment by the bar to do that which it was their duty to do without any appointment could give no added authority. Nor was any such appointment necessary to give the court jurisdiction. The court might summon the appellant to a hearing upon any information it had that it deemed worthy of credit, whether it came from lawyers or laymen. The manner in which the proceeding should be conducted, so that it be without oppression or injustice, was for the court itself."

*Ex parte Wall*, 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552.

4. It is complained that the Supreme Court does not appear to have ordered the filing of the charges. There is no merit in this contention, especially at this late day. The court has taken jurisdiction of the charges and had a trial, which is a sufficient authorization for all practical purposes. The lack of a prior formal authorization works no prejudice to defendant, even if one was necessary, which we do not decide. If this objection is worthy of consideration at all, it should have been interposed *in limine.*

5 and 6. These grounds complain that the complaint is brought by Ben Williams on behalf of the Bar Commission, and that the charges are sworn to by one Stringer. It is not essential to jurisdiction to hear this case that the original petition should be sworn to. Even if necessary to be sworn to, the oath of Stringer was enough, though upon information and belief. *In re Shepard,* 109 Mich. 633, 67 N. W. 972. Nor was the objection asserted *in limine,* as it should have been to be available.

7. The contention that the guilt of the respondent should be proven beyond a reasonable doubt, as in criminal cases, is not sound.

"In the case of *Ex parte Wall,* 107 U. S. 265 [2 Sup. Ct. 569, 27 L. Ed. 552], the Supreme Court in speaking of this question said: 'The proceeding is in its nature civil, and collateral to any criminal prosecution by indictment. The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them.' In the case of *People ex rel. Shufeldt v. Barker,* 56 Ill. 299, the Supreme Court of that state, with reference to such a proceeding, said: 'The respondent, in express terms, denies the charge exhibited against him, and to overcome this express denial there ought to be required more than a mere preponderance of evidence. A charge so grave in its charcater, and so fatal in its consequences, ought certainly to be proved by what the law denominates a clear preponderance of the evidence.' These courts recognize in this rule, as we believe, that the proceeding is a civil one, and not a criminal one." (*In re Brown,* 2 Okla. 590, 39 Pac. 469.)

8 and 12. Nor is the offense with which respondent was charged barred by limitations. While there may be some classes of offenses which may be barred by limitations, this is not one

of them. In speaking of a similar charge against an attorney for disrespectful conduct towards the court, the Supreme Court of California said:

"As to the objection made that the offenses charged are barred by the statute of limitations, it appears that the acts complained of were committed some three years since. We do not understand that a charge of this kind can be barred by the statute of limitations, or that it should be, under any circumstances. The fullest opportunity should be given to investigate the conduct of an attorney who is charged with a violation of his duties as such; and while this court might not be willing to disbar or suspend an attorney if it appeared that there had been unreasonable delay in the presentation of the charges, so that a fair opportunity could not be had for procuring the witnesses and meeting the accusation, we are not prepared to say as a matter of law upon this demurrer that the accusation is barred either by the express terms of the statute of limitations or by analogy." (*In re Lowenthal,* 78 Cal. 427, 21 Pac. 7.)

This court, in the case of *In re Mosher,* 24 Okla. 61, 102 Pac. 705, 24 L. R. A. (N. S.) 530, 20 Ann. Cas. 209, quoted the language of the California court with approval when discussing the identical statute of limitations now invoked by respondent.

There has not been cited to us, and we doubt that there can be found, any authority sustaining a plea of statute of limitations to a proceeding for disbarment upon charges of conduct disrespectful to the court. The authorities rather sustain the contention that the courts have inherent power to protect their own dignity and enforce respect and punish disrespect from the attorneys practicing therein. *In re Brown,* 2 Okla. 590, 39 Pac. 469; *In re Goodrich,* 79 Ill. 148; *Beene v. State,* 22 Ark. 157.

"It is a general rule that the Legislature is powerless to interfere with the jurisdiction, functions, or judicial powers conferred by the Constitution upon a court, nor can it diminish, enlarge, transfer, or otherwise infringe upon the same." (11 Cyc. 706.)

"While the statutes of many of the states authorize the suspension or removal of attorneys upon specified grounds, it has generally been held that such statutes do not restrict the general powers of the court over attorneys, who are its officers, and that they may be removed for other than statutory grounds."

Our own Constitution emphasizes the independence of the three great departments of government, each from the other, by section 1 of article 4, reading as follows:

"Section 1. The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive, and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

It may be difficult to lay down any general rule, applicable to all cases, defining the exact boundaries between the power of the courts established by the Constitution and the power of the Legislature with reference to the admission to practice and disbarment of attorneys, who are officers of the courts. There may be a broad field of operation for proper legislative enactment upon this subject without encroaching upon the inherent powers of the court to protect its own dignity from contemptuous assault. The Legislature, in creating statutory offenses meriting disbarment, may conceivably prescribe proper rules of limitation, especially in courts of statutory creation. Without attempting to decide anything but the pending case, we lay down the principle that the Legislature has no power to fix a limitation, either as to time or upon the power of this court, that could be set up in bar of this prosecution. It would be intolerable if the attorneys, who are officers of the court, could treat the court with pronounced disrespect and be immune from disbarment by reason of the lapse of short time or other technicality. This court is established by one Constitution, and it is not competent for the Legislature to abolish it directly or indirectly, nor can it take away from this court those powers which inhere in similar courts at common law and which vested in it by virtue of its very establishment by the Constitution. If it were competent for the Legislature to enact that such offenses could not be punished by disbarment after one year, they could put a limitation of one day as well, and thus practically abolish the inherent power of the court to protect itself from further assaults by disrespectful practitioners. We cannot admit that the Legislature has power to encroach upon the inherent constitutional powers of this court, and are persuaded

that by the enactment of the act of limitation invoked in this case
the Legislature had no intention of giving the statute such an ap-
plication as would so encroach.

Even if the Legislature had the power and intended the act
of limitation to apply to charges of disbarment for conduct dis-
respectful to the courts, it may well be doubted whether it would
apply in the present case. The act complained of was a case of
the publication of a document in its nature grossly libelous of
the regular members of this court. So long as the document re-
mained in circulation, it was a continuous offense against the
dignity of this court, and the offense cannot be said to be ended
within the meaning of an act of limitation so long as it is out-
standing, unsuppressed, and unatoned for. The first utterance of
the offensive matter may constitute offense sufficient to merit
punishment, but its continuous remaining in the state of offense
is none the less an affront to the dignity of the court. It would
be possible, if defendant's contention is correct, to give wide cir-
culation in remote localities to a libelous document grossly dis-
respectful to the court which might impair the usefulness of the
court, and yet not be punishable because not brought to the court's
attention within the short period of limitation. The affront to
the court's dignity and the tendency to impair its usefulness and
to weaken the confidence of the people in it by means of the
libel takes place whether the court knew of it or not, and the
power of the court to protect itself from such indignities should
not be made to depend upon the fact or quickness of discovery
of it. The court should not tolerate at its bar anybody who is
now disrespectful or has at any time in the past been guilty of
disrespectful conduct not fully excused or punished.

For the reasons just stated, we must also overrule the con-
tention that the court is limited in its disciplinary power to the
grounds and remedies indicated by statute. The statutory pro-
visions are wise, but are merely cumulative, and do not impair
the inherent constitutional power of the court to deal with such
contempts in a proper, though nonstatutory, way. In Wyoming
an attorney was charged with applying vile epithets to the court

out of its hearing and the defendant was disbarred. The court, through Lacey, C. J., said:

"Our statute provides that this court 'may revoke or suspend the license of any attorney or counselor at law to practice therein, * * * fifth, for the willful violation of any of the duties of attorney or counselor.' The statute does not define the duties of an attorney or counselor. We have also a general statute adopting the 'common law of England, as modified by judicial decision,' and expressly providing that that common law 'shall be considered as of full force until repealed by legislative authority.' Comp. Laws, p. 193, sec. 1. The duties of an attorney in this territory are therefore the same as under the common law, his first duty being to the court of which he is an officer. 'The obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct towards the judges personally for their judicial acts.' *Bradley v. Fisher*, 13 Wall. 335, at page 355 (20 L. Ed. 646). The fountain of the power of the courts to remove attorneys as exercised at common law, is St. 4 Henry IV, c. 18, which is as follows: 'And if any such attorney be hereafter found notoriously in any default of record or otherwise he shall forswear the court and never after be received to make any suit in any court of the king. They that be good and virtuous and of good fame shall be received and sworn at the discretion of the justices, and, if they are notoriously in default, at discretion may be removed upon evidence of record or not of record.' It seems to us that the power to remove under our statute and the causes sufficient for removal, are as broad and comprehensive as at common law. Further, so far as questions now arising in this case are concerned, there is nothing in our statute, either expressly or by implication, repealing the common law." (*In re Brown*, 3 Wyo. 121, 4 Pac. 1085, 1087, 1088.)

10. In this tenth ground for the motion for rehearing defendant says:

"That the record and undisputed evidence in this case shows that defendant was arrested for libeling the courts and judges here complained of and in the book here complained of, and his case was set for trial before a jury on October 11, 1910, in the

county court of Oklahoma county, and these courts and judges by their attorney came into court on the day of trial and against the protest of the defendant dismissed the cases,   *   *   *   and we submit that these courts and judges having elected their remedy and voluntarily abandoned it, this proceeding should be dismissed."

It must be manifest that no other courts or attorneys could make an "election" that would deprive this court of its inherent disciplinary power to purge its rolls of attorneys of unworthy members, nor can it be seriously contended that this court made or estopped itself by an appearance (if such can be imagined) in the *nisi prius* court referred to. It appears that the charge in the court referred to was a simple charge of criminal libel, upon which defendant could have been punished on proof of guilt, without impairing the power of this court to disbar him. In the dismissal of the criminal charge in the *nisi prius* court defendant was more fortunate than deserving.

11. The defendant's eleventh contention is highly technical and without merit. Though the court sustained a motion to make allegations more definite and certain, the allegations which were the subject-matter of the motion were not abandoned or thereby put out of court. Defendant's failure to insist upon compliance therewith operated as a waiver thereof. It is evident that the defendant was not misled or prejudiced by any obscurity, indefiniteness, or uncertainty therein, and he points out none such in the motion for rehearing.

13. Respondent objects that he was not present when the decision of this court was rendered. He was within the jurisdiction of the court, and it was his duty to attend upon it. There is no law requiring special notice to him that the court will render a judgment in his case. He has every right he would have had were he present, and is not injured even by his own neglect to be present. He also complains that only two of the five special justices were "present and concurring when said decision was handed down." The fact is, and the record shows, that a quorum of the court was present and concurring in the decision at its ren-

dition. Neither law nor custom requires a majority of the court to announce a decision in chorus. This objection is obviously without merit.

The application for rehearing is overruled.